**In the Matter of Richard J. THONERT.**

No. 17S00–9407–DI–627.

Supreme Court of Indiana.

July 3, 1997.

Kevin P. McGoff, Kiefer & McGoff, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, David B. Hughes, Trial Counsel, Indianapolis, for The Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM.

After conducting an evidentiary hearing on the Disciplinary Commission's *Verified Complaint for Disciplinary Action,* the hearing officer appointed by this Court concluded that the respondent, Richard J. Thonert, violated Rules 1.16(d), 8.1(a), and 8.4(c) of the *Rules of Professional Conduct for Attorneys at Law.* The respondent has petitioned this Court for review of the hearing officer's report, the Commission has briefed its position, and this matter is now before us for final resolution. The respondent's 1974 admission to this state's bar subjects him to this Court's disciplinary jurisdiction.

Our review of attorney disciplinary cases involves a *de novo* examination of all matters presented. *In re Frosch,* 643 N.E.2d 902 (Ind.1994); *In re Kern,* 555 N.E.2d 479 (Ind.1990). Although the findings and conclusions of the hearing officer are accorded appropriate emphasis due to his or her unique opportunity for direct observa-tion of witnesses, this Court is the final arbiter of misconduct and sanction. *In re Barratt,* 663 N.E.2d 536 (Ind.1996).

The Commission's complaint is in two counts. Under Count I, we now find that on September 24, 1992, the wife of a criminal defendant met with the respondent to discuss representation of the defendant in one criminal case pending in Whitley County, two criminal cases pending in Kosciusko County, and to pursue a claim of use of unreasonable force against the Kosciusko County Sheriff's Department. At that meeting, the wife signed a $4,500 promissory note in favor of the respondent and his partner. On its face, the note required the wife to pay $1,000 on its execution, $75 on October 1, 1992, and $75 each seven days thereafter until paid in full. In the event of default, interest on the unpaid balance was to accrue at 18% per annum. It further provided that the $4,500 "represents the nonrefundable retainer for legal services in re: Injury to [defendant] ($2,500.00), Kos. Co.Crim. Case ($1,000.00) (Whitley Co. $1,000.00)," and that "additional attorney fees and expenses will be billed to client and expenses to be paid in advance." The respondent informed the wife that the retainer was "nonrefundable." The wife paid $1,000 toward satisfaction of the note on September 24, 1992.

The respondent sent a letter to the defendant that same day confirming the agreement signed by the wife. In the letter, the respondent described the $4,500 retainer as "minimum nonrefundable." The letter also advised that there would be "additional attorneys' fees and expenses depending upon the nature of the work to be done, the issues involved and [the respondent's] experience in handling these types of matters." The respondent also indicated that the $1,000 retainers for the criminal cases might be reduced if the cases required no court hearings and if they could be concluded by plea agreement within thirty days.

The respondent entered his appearance in the Kosciusko County cases on September 25, 1992. That day, he requested a jury trial and filed a one-page motion for pretrial discovery. He filed identical pleadings in Whitley County.

After learning of the arrangements for his legal representation, the defendant concluded that the respondent's fees were too high and directed his wife to terminate the representation. The wife testified that she contacted the respondent by telephone and that he reminded her that the retainer was nonrefundable and that, should she terminate the representation, she would still be responsible for the unpaid balance of the promissory note. Not wanting to lose the $1,000 she had already paid, the wife reluctantly agreed to the respondent's continued representation of the defendant. The respondent denied that the conversation ever took place.

By letter dated September 28, 1992, a deputy prosecuting attorney in Kosciusko County informed the respondent of a proposed plea agreement. Similarly, on October 22, 1992, the Whitley County Prosecutor's Office sent the respondent a form letter stating that a proposed plea agreement was enclosed. On November 19, 1992, the Whitley County Prosecutor's Office sent a second such letter to the respondent, again indicating that a proposed plea agreement was enclosed, apparently due to concerns that the agreement had been mistakenly omitted from the first letter. The respondent testified that on November 2, 1992, he sent the defendant two letters dictated October 23 and containing the proposed plea agreements from the Whitley and Kosciusko County prosecutors' offices. They indicated that the fees would be $2,500 for the Whitley County case, $2,500 for the Kosciusko County cases, and that additional fees could be due if trial was necessary. The defendant testified that he never received either of the letters. At some point during the representation, the wife paid the respondent an additional $450 pursuant to the promissory note. Between September 24 and November 24, 1992, the wife telephoned the respondent five or six times to discuss her husband's case. He returned only one of the calls, telling her that he was trying to arrange a plea agreement.

In late November 1992, the defendant decided he wanted another attorney, David Kolbe, to represent him in the pending cases. Kolbe, the defendant's wife, and the respondent met on November 24, 1992 to discuss

Kolbe's representation, and thereafter informed the respondent that his services were no longer wanted. Later that day, the respondent for the first time met with the defendant in the Kosciusko County Jail and was again informed that his services were no longer desired. The respondent then informed the defendant of the proposed plea agreements.

Kolbe, on behalf of the defendant and his wife, later demanded refund of $1,350 of the $1,450 paid. The respondent refused. Kolbe later entered an appearance in the pending cases; the respondent withdrew from each.

On January 23, 1993, after a formal investigation had been commenced by the Commission, the respondent, the defendant and the defendant's wife entered into an "Agreement of Settlement and Release" which provided that the respondent would refund $1,200 of the fees paid.

In light of the aforementioned events, the hearing officer concluded that the respondent violated Ind.Professional Conduct Rule 1.16(d) by failing promptly to refund to his client all unearned fees and Prof.Cond.R. 8.4(c) by misleading the wife that the fees were nonrefundable.

█ Because the demand for a nonrefundable $4,500 fee irrespective of any termination of the respondent's employment was an unreasonable fee, the unrefundable provision was in our view unenforceable. We do not hold that unrefundable retainers are *per se* unenforceable. There are many circumstances where, for example, preclusion of other representations or guaranteed priority of access to an attorney's advice may justify such an arrangement. But here there is no evidence of, for example, any value received by the client or detriment incurred by the attorney in return for the nonrefundable provision, other than relatively routine legal services. Of course, the client is free to terminate the representation at any time.

██ Professional Conduct Rule 1.16(d) requires lawyers to refund any unearned portion of an advance fee upon termination of

representation.[1] The respondent actually took little action on behalf of the defendant aside from filing appearances and requesting jury trials in the criminal cases. His representation was terminated long before the criminal matters were resolved and after he had taken only rudimentary action. There is nothing in the record indicating that he took any action at all in pursuit of the civil claim against the Kosciusko County Sheriff's Department. For these minimal services, the respondent accepted $1,450 from the wife and obligated her through a promissory note to pay another $3,050. His failure promptly to refund unearned fees after termination of the representation violated Prof.Cond.R. 1.16(d).[2] We do not find facts in this case sufficient to support a violation of Prof. Cond.R. 8.4(c) because, although the respondent was incorrect in advising the defendant's wife that the fee was nonrefundable, we find no basis to conclude that the respondent was guilty of deceit, which has an element of intentional misconduct.

Pursuant to Count II of the complaint, we now find that on January 26, 1993, the respondent responded in writing to the allegations contained in the defendant's grievance to the Commission. His response included copies of the two letters the respondent purportedly sent to the defendant on November 2, 1992, in which he informed the defendant of the proffered plea agreements and that a copy of each was enclosed. Additionally, the respondent informed the Commission by letter dated April 19, 1994, that the proposed plea agreements from both Kosciusko and Whitley counties were enclosed with the letters he claimed to have sent to the defendant. At hearing, the defendant testified that he never saw the plea agreements prior to November 24, 1992. His wife testified that, during her visits with the defendant prior to November 24, 1992, the defendant never mentioned the proposed plea agreements.

In support of his assertion that he sent the proposed plea agreements to the defendant prior to November 24, 1992, the respondent offered the testimony of two employees of the Whitley County Prosecutor's Office and one employee of the Kosciusko County Prosecutor's Office.[3] Generally, the employees testified that each office routinely sent proposed plea agreements to defense attorneys along with letters indicating that proposed plea agreements were enclosed. During examination, the employees identified such letters sent to the respondent relative to the defendant's case.[4] Each witness concluded that the plea agreements had been attached to or contained in the letters, although none had specific recollection of the plea agreements being sent. The hearing officer concluded that the respondent had not forwarded the plea agreements to the defendant prior to November 24, 1992, and that by informing the Commission that he had, he violated Prof.Cond.R. 8.1(a), which provides that a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter.

The sworn testimony of both the defendant and his wife supports the hearing officer's finding that the respondent did not forward the proposed plea agreements to the defendant prior to November 24, 1992. The testimony of the employees of the Whitley County Prosecutor's Office described only its usual practice regarding the dissemination of plea agreements; neither specifically recalled

---

1. Professional Conduct Rule 1.16(d) provides, in relevant part:

   Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

2. The respondent's attempted retention of $1,450 for the nominal service he provided to his client might have violated Prof.Cond.R. 1.5, which states that lawyers' fees must be "reasonable," had the Commission charged the respondent with violating that provision.

3. The respondent has moved this Court to supplement the record with the deposition testimony of the three employees and we grant that motion.

4. As previously found by this Court, the Whitley County Prosecutor's Office sent such letters to the respondent on October 22 and November 19, 1992. The Kosciusko County Prosecutor's Office sent such a letter on September 28, 1992.

whether the proposed agreement was actually sent to the respondent. The evidence strongly suggests that the respondent did not possess a copy of the agreement prior to November 2, 1992, the day he claims he sent it to the defendant, in light of the second letter he received from that office on November 19, again indicating that a copy of the agreement was enclosed. Further, the testimony of the three employees is only relevant as to whether *the respondent* possessed the plea agreements, and not whether the respondent *then forwarded* them to the defendant. Evidence should not be weighed in fragmentary parts, but rather viewed as a whole to see or understand the pattern which it presents. *In re Pawlowski*, 240 Ind. 412, 433, 165 N.E.2d 595 (Ind.1960). Overall, the record in this case indicates that the respondent had very little contact with either the defendant or the wife for a two-month period after being retained. Approximately six telephone calls from the wife went unheeded until the respondent finally responded with news about the progress of the case. The respondent did not even meet with the defendant until two months after being retained. Given his pattern of noncommunication with his client, we are convinced that the respondent did not make the defendant aware of the proposed plea agreements until November 24, 1992, and therefore find that he violated Prof.Cond.R. 8.1(a) by falsely informing the Commission that he had done so prior to that date.

Having found misconduct, we must now assess an appropriate sanction. In this analysis, we examine the nature of the misconduct, the actual or potential injury flowing therefrom, the state of mind of the respondent, the duty of this Court to protect the integrity of the profession, the risk to the public in permitting the respondent to continue in the practice of law, and matters in aggravation and mitigation. *In re Helman*, 640 N.E.2d 1063 (Ind.1994). The respondent completely abandoned his obligation to act in his client's best interests in his greedy pursuit of pecuniary gain. His subsequent misrepresentation to the Commission reveals callous disregard of the significance of his misconduct and a lack of respect for the disciplinary process. For these reasons, we

are convinced that a period of suspension is required to demonstrate our intolerance of the respondent's actions.

It is, therefore, ordered that the respondent, Richard J. Thonert, be suspended from the practice of law for a period of thirty (30) days, beginning August 11, 1997. At the conclusion of that period, he shall be automatically reinstated to the practice of law, provided he pays the costs of this proceeding and otherwise complies with the requirements of Admis.Disc.R. 23(4)(c).