**In the Matter of Richard J. THONERT**

No. 17S00–9407–DI–627.

Supreme Court of Indiana.

April 20, 1998.

Kevin P. McGoff, Kiefer & McGoff, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

Lawyers who have been suspended from the practice of law may not allow their non-lawyer staff to continue to actively operate their law office and conduct business on behalf of clients during the period of suspension.

On July 3, 1997, this Court suspended the respondent, Richard J. Thonert, for a period of thirty days, beginning August 11, 1997, and ending September 10, 1997, for violations of the *Rules of Professional Conduct for Attorneys at Law. Matter of Thonert,* 682 N.E.2d 522 (Ind.1997). That order specified that the respondent would be automatically reinstated to the practice of law, provided he pay the costs of the underlying proceeding and comply with the requirements of Admis.Disc.R. 23(4)(c).[1] On September 2, 1997,

1. Indiana Admission and Discipline Rule 23(4)(c) provides:

Whenever a person is suspended for a definite period not to exceed six (6) months with provision for automatic reinstatement, the commis-

the Commission filed its *Verified Objection to Automatic Reinstatement,* stating that during the period of his suspension, the respondent engaged or attempted to engage in the practice of law by acting through non-attorney employees of his office. On September 10, 1997, this Court stayed the respondent's automatic reinstatement pending consideration of the Commission's objections. Thereafter, the parties filed stipulations of fact and a joint petition for ruling. Each fully briefed its position. On October 17, 1997, this Court issued an *Order Imposing Additional Suspension and Lifting Stay of Automatic Reinstatement,* finding that the respondent "violated the order of suspension and that . . . an additional period of suspension, with automatic reinstatement, is warranted." Accordingly, we extended the respondent's suspension from September 10, 1997, until October 17, 1997. This opinion more fully sets forth the facts and circumstances of this case and our analysis underlying our decision to extend his suspension.

## I. FACTS

Adopting the parties' stipulations, we now find that the respondent is a solo practitioner with a law office located in Fort Wayne, Indiana. At relevant times, the respondent employed a four-person non-lawyer support staff. The respondent's law practice is one of high volume and relies heavily on the support staff to process paperwork. Much of the practice in routine matters is systematized, relying on support staff to generate the appropriate paperwork upon the occurrence of certain events. On some routine matters, support staff members sign the respondent's name to legal documents. Occasionally, this is done without the respondent's input or review.

Prior to his disciplinary suspension on August 11, 1997, the respondent filed motions to continue all matters that were set for hearing or trial during his period of suspension, arranged for another attorney to speak with his clients during that time and to cover any court hearings for which a continuance could not be obtained or which arose during the suspension, and informed his staff that he could not practice law during the suspension. He informed his staff that any questions they had should be directed to specific attorneys the respondent had arranged to be available for consultation.

The respondent was in his office periodically between the effective date of his suspension and August 25, 1997, after which he left the state to visit with relatives. Various questions arose among his staff about what they could and could not do during the period of suspension. For answers, they contacted the office of the respondent's personal attorney. An associate in that office called the respondent and advised him generally as to what actions his support staff could take during the period of suspension. The respondent recorded the conversation and allowed his staff to listen to the tape. He then told his staff members that they were not to provide legal advice to clients, but that they could keep clients informed of court dates or other matters that occurred in their cases, that if they had questions they should contact the attorney with whom the respondent had arranged for them to speak, and that the designation "Attorney at Law" should be removed from the office letterhead. In signed correspondence, the respondent directed them to write "Secretary to Richard J. Thonert." Projects the respondent instructed his staff to undertake during the period of suspension included going through old accounts receivable and sending out new statements, organizing the office, and closing old files. He gave them no specific instructions concerning the preparation and processing of routine forms and correspondence. During the suspension, several clients in fact spoke with the attorney to whom they were referred. That attorney appeared in court on numerous matters on behalf of the respondent's clients.

sion shall have the right to file written objections to such automatic reinstatement, setting forth its reasons for such objections, which shall be limited to:

(1) failure to comply with the terms of the order;

(2) pendency of other claims;
(3) failure to comply with the terms of Section 27, infra and;
(4) failure to satisfy fully the costs of the proceeding assessed pursuant to Section 16. (Emphasis added).

While in his office during the period of suspension, the respondent reviewed incoming mail and dictated "informational" letters to clients. The letters, signed by the secretaries, advised of court hearings or other matters relative to specific cases. His staff produced, signed and dispersed form letters advising clients of documents received during the suspension period. The respondent stipulated that not only did he believe that he and his staff were permitted to provide such information to clients, but also that his failure to do so could expose him to further disciplinary action. If a matter on an existing case needed to be continued or some other action was needed, the respondent directed his staff to contact the referral attorney to handle the matter. In some instances, the respondent and/or his staff prepared motions or other documents and forwarded them to the attorney for signature and filing. If an existing client presented a new matter, or if a potential new client contacted the office, the person either was directed to another attorney or was scheduled to meet with the respondent after the period of suspension expired.

On August 8, 1997, a member of the respondent's support staff prepared and sent a letter to a deputy prosecuting attorney in Allen County requesting his support in a motion for sentence modification. Attached to the letter was a proposed petition for modification of sentence, an agreed entry, and a status report from the client's probation officer. This correspondence was a duplicate of an earlier, pre-suspension request which the respondent had sent to the prosecutor but which the prosecutor apparently had not acknowledged.

On August 18, 1997, a member of the respondent's support staff sent a letter to another of the respondent's clients enclosing a charging information and providing instructions relating to discovery material which had been received from the prosecutor in the case. The support staff person indicated that it was the usual practice in the respondent's office to forward to clients discovery materials and other pleadings received by the respondent. The respondent dictated similar letters during his suspension for signature and dispersal by his clerical staff.

On August 20, 1997, a member of the respondent's support staff called the Wells County Prosecutor's Office asking about discovery, charging documents, cause numbers, and hearing dates relative to a criminal action pending against one of the respondent's clients. The call was to follow up on similar inquiries made by the respondent to the prosecutor's office prior to his suspension.

On August 21, 1997, a member of the respondent's support staff prepared and sent a letter to an Allen County deputy prosecuting attorney requesting that the prosecutor agree to modify the conviction of another of the respondent's clients from a Class D felony to a Class A misdemeanor. Attached to the letter was a petition, an agreed entry, and a status report from the probation officer. The correspondence was essentially a duplicate of a prior request made by the respondent to the deputy prosecutor.

On August 25, 1997, a member of the respondent's support staff sent a letter to a Wells County deputy prosecuting attorney concerning one of the respondent's clients. The letter stated, in relevant part:

Dear [Deputy Prosecuting Attorney]:

I am writing concerning [client]. His present driving status is HTV. In order for him to become reinstated, it would be necessary to set aside one or more of the above-referred convictions.

If vacating one or more of these convictions would be acceptable to your office, I am enclosing the following documents:

1. Copy of [client's] Driver's Record

2. Agreed Entry/Order

After you have the opportunity to review your file, please send a letter concerning your position in this matter to our office. I remain,

Very truly yours,

[Secretary]

Secretary to Richard J. Thonert

The support staff person signing the letter considered the act of producing and dispersing the letter a routine "clerical" task.

On August 26, 1997, a member of the respondent's support staff prepared and sent a letter to an Allen County deputy prosecuting attorney requesting that the prosecutor agree to a petition for post-conviction relief to vacate and set aside a prior traffic offense against another of the respondent's clients. Attached to the letter was a petition for post-conviction relief, an agreed entry, and a proposed order. Again, the correspondence essentially was a duplicate of a request made by the respondent prior to his suspension.

The respondent stipulates that numerous other documents similar to those identified above were produced and sent by his staff during his period of suspension. The respondent's bookkeeper received on his behalf no legal fees on new matters during his period of suspension.

On September 7, 1997, after learning that his automatic reinstatement had been stayed upon the Commission's objections, the respondent met with his staff and informed them that the letters mailed to the deputy prosecutors and others went beyond informing clients of the status of their cases, that they should not have been sent, and that they could not continue to be sent during the period of his suspension. The respondent then arranged for the referral attorney to completely supervise the respondent's office pending his reinstatement.

## II. COMMISSION'S ALLEGATIONS

In its *Verified Objection*, the Commission concluded that the respondent "attempted to circumvent this Court's order of suspension from the practice of law by continuing to actively operate his law office and conduct business on behalf of clients during the period of suspension." Specifically, the Commission contends that the respondent's law office engaged in the unauthorized practice of law during the respondent's period of suspension. The respondent argues that it was not his intention to violate this Court's order of suspension and that his intention only was to allow his staff to continue to disperse routine correspondence and information to clients and adverse parties as it systematically did before he was suspended.

## III. DISCUSSION

 This Court has noted that

The core element of practicing law is the giving of legal advice to a client and the placing of oneself in the very sensitive relationship wherein the confidence of the client, and the management of his affairs is left totally in the hands of the attorney. The undertaking to minister to the legal problems of another creates an attorney-client relationship with regard to whether the services are actually performed by the one so undertaking the responsibility or are delegated or subcontracted to another. It is the opinion of this Court that merely entering into such a relationship constitutes the practice of law.... *[t]he conducting of the business management of a law practice, in conjunction with that practice, constitutes the practice of law.* (Emphasis added).

*Matter of Perrello*, 270 Ind. 390, 398, 386 N.E.2d 174, 179 (1979). We have also said that "[to] practice law is to carry on the business of an attorney at law," and "to make it one's business to act for, and by the warrant of, others in legal formalities, negotiations, or proceedings." *Fink v. Peden*, 214 Ind. 584, 17 N.E.2d 95 (1938). A person who gives legal advice to clients and transacts business for them in matters connected with the law is engaged in the practice of law. *State ex rel. Pearson v. Gould*, 437 N.E.2d 41 (Ind.1982). Thus, the practice of law is not defined only as the giving of legal advice or acting in a representative capacity—it also had been extended by this Court to conducting the business management of a law practice.

 It is undisputed that the respondent's non-lawyer support staff produced motions, proposed entries, and correspondence seeking legal relief on behalf of clients and sent them to opposing counsel. It is also undisputed that the staff informed clients of upcoming hearing dates, provided instructions to them for answering formal discovery requests and, in a general sense, advised them of the status of their legal proceedings. We find that the communications to public officials undertaken in a representative capacity by the members of the

respondent's support staff during his period of suspension, which sought to obtain benefits for individuals represented by the respondent, constituted the practice of law. Likewise, the production and communication of motions, pleadings, and proposed agreed entries, done without the supervision of an attorney licensed to practice in this state, constituted the unauthorized practice of law. Pursuant to court rule, legal assistants may perform services only under the direct supervision of a lawyer authorized to practice in this state. *See* Guideline 9.1: Use of Legal Assistants. A lawyer is responsible for all of the professional actions of a legal assistant performing legal assistant services at the lawyer's direction and should take reasonable measures to ensure that the legal assistant's conduct is consistent with the lawyer's obligations under the *Rules of Professional Conduct. Id.* The respondent himself admits that his staff should not have contacted deputy prosecuting attorneys asking that the state agree to sentence modifications or post-conviction relief and that they should not have sent discovery to clients with instructions as to how to begin preparing factual responses. He states that he should have given clearer and more thorough advice and instruction to his staff about what it could and could not do during his suspension.

■ The respondent was responsible for ensuring that his staff was adequately informed about what it could and could not do while he was suspended. Guideline 9.1; *see also* Ind. Professional Conduct Rule 5.3. The order imposing his initial suspension was filed July 3, 1997, with the suspension effective August 11. The purpose of the delay between issuance of the order and the effective date of the suspension was to give the respondent time to make arrangements for the care of his clients' legal needs, both substantive and ministerial, to be placed in the expert hands or under the supervision of a licensed attorney. He failed to make adequate arrangements or provide sufficient explanation until his staff had engaged in the unauthorized practice of law. His failure to do so placed his clients at great risk by allowing their cases to be handled by those not trained in the law and licensed to practice.[2]

■ This case also included less obvious instances of misconduct. The fact that the respondent allowed his support staff to continue "to carry on the business of an attorney at law," i.e., to inform clients of upcoming hearing dates, to apprise them of the status of their legal matters, etc., without the direct supervision of a licensed attorney, constituted the unauthorized practice of law. We caution that to allow non-lawyer staff any contact with clients about the legal status of their cases in the absence of a lawyer's supervision risks harm to the legal rights of the clients. By this decision today, we do not mean to imply that lawyers who have been suspended from the practice of law should simply "walk away" from the practice of law to the detriment of their clients; instead, lawyers should make arrangements for all client needs arising during the period of suspension to be handled by or under the direct supervision of a licensed attorney, or inform all clients who do not choose to use the services of the referral attorney to seek substitute legal counsel of their choice. Admis.Disc.Rule 23(26)(c).[3]

2. We note that the stipulated facts reveal that the respondent himself maintained a presence in his law office during his suspension and even drafted correspondence to various clients in conjunction with their pending legal matters. Attorneys who have been suspended from the practice of law are, under our court rules, treated differently than a person who has never been admitted to practice. Effective February 1, 1998, Admis.Disc.R. 23(26), concerning the duties of disbarred or suspended attorneys, provides:

(b) Duties of Disbarred or Suspended Attorneys. Upon receiving notice of the order of suspension or disbarment, the respondent shall not undertake any new legal matters between

service of the order and the effective date of the discipline. *Upon the effective date of the order, the respondent shall not maintain a presence or occupy an office where the practice of law is conducted.* A respondent suspended for more than six (6) or disbarred months shall take such action as is necessary to cause the removal of any indicia of lawyer, counselor at law, legal assistant, law clerk or similar title. (Emphasis added).

The respondent's actions in this case took place before this Court formalized its position with the amendment to Admis.Disc.R. 23(26)(b).

3. Admission and Discipline Rule 23(26)(c) provides:

We note, however, that the respondent made a good-faith effort to inform his employees of what they could and could not do during his suspension. When he learned of their communications with clients and prosecutors, he immediately took action to correct the wrongful conduct. He has also expressed sincere remorse for his actions. Because the respondent apparently did not intend to circumvent our July 3, 1997, order of suspension, we find that the brief extension of the suspension already imposed is a sufficient sanction for his misconduct during his period of suspension. The respondent is also admonished of his obligations to comply with the duties of disbarred or suspended attorneys set forth in Admis.Disc.R. 23(26)(b) and discussed in this Court's recent opinions in *Matter of DeLoney*, 689 N.E.2d 431 (Ind. 1997), *Matter of Thonert*, 682 N.E.2d 522, etc.

Costs of this proceeding are assessed against the respondent.

---

(c) Duties of Suspended Attorneys. The suspended attorney shall, within twenty (20) days from the date of the notice of suspension, file with the Court an affidavit showing that:

(1) All clients being represented by the attorney in pending matters have been notified by certified mail, return receipt requested, of the nature and duration of the suspension, and all pending matters of clients requiring the attorney's services during the period of suspension have been placed in the hands

and care of an attorney admitted to practice before the Supreme Court of Indiana with the consent of the client.

(2) Clients not consenting to be represented by substitute counsel have been advised to seek the services of counsel of their own choice.

(3) Proof of compliance with this section of the rule shall be a condition precedent to reinstatement.