ATTORNEY FOR THE RESPONDENT
Carl Epstein
Indianapolis, Indiana

ATTORNEY FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
Donald R. Lundberg, Executive Secretary
Seth T. Pruden, Staff Attorney
Indianapolis, Indiana

# In the

# Indiana Supreme Court

_____

No. 49S00-0312-DI-616

IN THE MATTER OF

**JOHN H. FREEMAN, IV**                                    *Respondent.*

_____

Disciplinary Action

_____

**October 17, 2005**

*Per Curiam,*

In this opinion, we find that respondent's pattern of neglecting his clients and his obligations under the *Rules of Professional Conduct* warrants his suspension from the practice of law for twelve (12) months.

The hearing officer submitted his *Findings of Fact and Conclusions of Law* to the Court on May 5, 2005. Respondent was charged with twelve counts of misconduct. The hearing officer found that the Commission failed to prove its allegations with regard to Count I of the complaint, but in the remaining eleven counts he found the Commission proved some, though not all of the allegations.

Where the hearing officer's report is challenged, we review the matter *de novo*. Final determination regarding misconduct and sanction rests with this Court. <u>Matter of Lamb</u>, 686 N.E.2d 113 (Ind. 1997). Respondent's admission to the practice of law in this state in 1993, confers this Court with jurisdiction over this matter. The hearing officer's findings regarding Count I, that the Commission failed to establish respondent's alleged misconduct by clear and convincing evidence, are not challenged and we therefore adopt the hearing officer's findings as to this count.

As to the remaining counts, we find that respondent's numerous instances of misconduct share many common characteristics. For example, in Counts III, IV and VI through XII, respondent entered into written fee agreements calling for "non-refundable retainers". In Counts VI, VII, VIII and X, he also failed to disclose to his clients how their retainer would be applied against his hourly billing rate. In addition to this misconduct, we find further violations by respondent in Counts II through XII.

Under Count II, respondent was hired to represent an individual incarcerated for murder. After accepting $3,000, respondent did no substantial work on behalf of the client. Upon being requested to refund his unearned fee, not only did respondent fail to refund any of the fee, but he also replied by sending a bill for an additional $20.

Under Count III, respondent was hired to contest an alleged support arrearage and to decrease the client's support obligation. Respondent charged the client a $200 "non-refundable retainer" plus $100 for each court appearance. The client traveled from Louisville to Indianapolis for the hearing on the matter, but respondent failed to appear.

Under Count IV, a mother hired respondent to represent her child in a juvenile delinquency proceeding. Here, respondent charged a "minimum fee" of $750, with $450 designated as a "non-refundable retainer". Respondent failed to appear for the final hearing in the matter, resulting in the mother negotiating an agreement with the prosecutor on behalf of her son.

Count V, which covers misconduct arising under counts II through XII, is discussed below.

Under Count VI, respondent was hired to correct an allegedly erroneous sentence. After being paid $750, respondent did not communicate with the client about the basis for modifying the sentence and failed to properly investigate and prepare the motion for modification.

Under Count VII, a client hired respondent to enforce visitation rights with his children. Respondent charged the client a "minimum fee" of $350, with a "non-refundable retainer" of $150. Respondent's agreement also called for charges for paralegal services and expenses if he billed at an hourly rate. Respondent filed his appearance for the client and later sought and obtained a continuance of the hearing date. Respondent did not notify his client of the continuance and as a result, the client appeared and waited several hours before learning the matter had been continued. At the next scheduled hearing respondent failed to appear.

Under Count VIII, a client hired respondent to represent him on multiple counts of robbery. Respondent's "minimum fee" in this case was $3,000, with a "non-refundable retainer" of $500 and an hourly rate of $150. Respondent failed to appear for a court hearing and failed to maintain communication with the client. The client terminated respondent's representation, at which time respondent attempted to limit his liability for malpractice by presenting the client with a "Release and Stipulation". Under the terms of this document the client was asked to agree that respondent had acted ethically and that the client would not file a disciplinary complaint or civil action against respondent. In exchange, respondent agreed to refund $1,500 to the client. The agreement also called for the imposition of treble damages upon breach of the agreement. Respondent did not advise the client to seek independent counsel regarding the release, which the client ultimately refused to sign.

Under Count IX, a client hired respondent to assist her in enforcing a child support order and modifying visitation. She paid a $500 "non-refundable retainer" and agreed to pay $150 per hour for legal services. Respondent failed to timely respond to the client's numerous attempts to contact him. Respondent subsequently filed a "Verified Petition to Modify Support and Contempt Citation", which the client had not reviewed, signed, or authorized respondent to sign on her behalf. The pleading also did not seek the modification of visitation the client had sought. On the day the case was set for hearing, respondent failed to appear. At a subsequent hearing date, respondent again failed to appear.

Under Count X, respondent was hired to represent a client in criminal proceedings. A dispute arose over the terms of respondent's fee and he moved to withdraw from the case without notifying the client. The client learned of respondent's withdrawal when he appeared for a bond reduction hearing and respondent was not present.

Under Count XI, a grandmother hired respondent to represent her granddaughter in a delinquency matter and school expulsion proceedings. The grandmother paid respondent a $750 "non-refundable retainer". Respondent failed to notify the client of the date for the expulsion hearing. Respondent did not appear at the expulsion hearing and, as a result, the granddaughter was suspended from school. Following the missed expulsion hearing, respondent apologized and stated he would try to correct the situation. He then failed to appear for the delinquency hearing. Despite having taken little substantive action on behalf of the client, when the client requested a refund, respondent remitted only $30.

Under Count XII, a client hired respondent to represent her in an action for dissolution of marriage and child custody. Respondent's agreement with the client called for a "minimum fee" and "non-refundable retainer" of $1,000. Respondent appeared for the first hearing and the court ordered him to prepare a paternity worksheet. Respondent failed to prepare the worksheet and failed to respond to the client's attempts to contact him.

Finally, as alleged in Count V, we find that the pattern of conduct described above establishes that respondent did not provide competent representation to his clients.

The misconduct described above establishes numerous violations of the *Rules of Professional Conduct*. The non-refundable retainers charged by respondent violated Prof.Cond.R. 1.5. Matter of Thonert, 682 N.E.2d 522, 524 (Ind. 1997); see also, Matter of Kendall, 804 N.E.2d 1152, 1160 (Ind. 2004).

Related to this, respondent failed to establish in his fee agreements how his hourly rate would be applied against his retainers. Respondent violated Prof.Cond.R. 1.5(b), which requires a lawyer to communicate to a client the basis or rate of the lawyer's fee. Matter of Salwowski, 819 N.E.2d 823 (Ind. 2004).

Respondent's failure to return unearned fees and his withdrawal from a case without notice to the client or protecting the client's interests violated Prof.Cond.R. 1.16(d). His failure to communicate with his clients, coupled with his failure to explain matters such that his clients could make informed decisions, violated Prof.Cond.R. 1.4(a) and (b). His failure to seek a modification of visitation, as requested by a client, violated his duty to abide by the client's decisions concerning the objectives of the representation as set forth in Prof.Cond.R. 1.2(a). Seeking to limit his liability for malpractice violated Prof.Cond.R. 1.8(h). Respondent's filing of a verified

4

pleading that had not in fact been verified or authorized by the client, violated Prof.Cond.R. 3.3(a) and 8.4(d). Matter of Haughee, 787 N.E.2d 376 (Ind. 2003).

Finally, respondent's overall conduct demonstrated a lack of competence and diligence that is contrary to the requirements of Prof.Cond.R. 1.1 and 1.3.

Having dealt with the undisputed issues, we now address the Commission's challenge to the hearing officer's finding in Count VI that it did not provide clear and convincing evidence that respondent violated Prof.Cond.R. 8.4(d) and Admis.Disc.R. 22. The basis for these violations is a letter that respondent sent to a client, in response to a letter from the client to the respondent. Respondent's letter stated in part:

> Please do NOT EVER in your life send me another letter. If you do
> I will have to make trouble for you while you are locked up!

Contrary to the finding of the hearing officer, we believe the language of the letter constituted impermissible conduct. Though, as respondent points out, he did not threaten to use confidential information to the client's disadvantage, this is not the only way that a violation can occur. In this case, the client had written seeking a copy of his file and a refund of his fees. Respondent did not even open the letter and responded as described above. Respondent's letter not only constituted a denial of the client's right to his file, but also had the effect of hindering the administration of justice by chilling or preventing the client from seeking redress in his underlying criminal case or from seeking a refund of unearned fees. A lawyer, who threatened to file a defamation suit against his client if she pursued disciplinary action against him, was found to have violated Prof.Cond.R. 8.4(d) by hindering the administration of justice. Matter of Whitney, 820 N.E.2d 143 (Ind. 2005). Respondent's threat to make trouble for his incarcerated former client is likewise not acceptable.

We now turn to the appropriate discipline to be meted out for the violations noted above. In making this determination, we consider the nature of the misconduct, the lawyer's state of mind which underlies the misconduct, actual or potential injury flowing from the misconduct, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the respondent to continue in practice, and any mitigating or aggravating factors. Matter of Lehman, 690 N.E.2d 696 (Ind.1997). In this case, respondent's serial neglect of his client's cases is a significant aggravating factor. We suspended a lawyer for one year based upon six counts of misconduct involving failure to take significant action on behalf of clients, failure to refund un-

earned fees and requesting a client to dismiss a grievance in exchange for a fee refund. Matter of Warren, 708 N.E.2d 873 (Ind. 1999). Here, not only are we faced with respondent's serial neglect, but also his filing with the trial court of a verified pleading that had not been authorized by the client. Respondent's conduct often left his clients abandoned and forced to fend for themselves. His demonstrated lack of competence warrants a substantial suspension.

In mitigation, the hearing officer notes that respondent is undergoing treatment for depression and anger. He also notes that respondent's doctor categorizes the respondent as an impaired lawyer. Findings of Fact and Conclusions of Law, p. 26. These health concerns do not explain, nor excuse respondent's misconduct; neither do they explain why respondent did not take steps to protect his clients from his inability to function. Matter of McCarty, 729 N.E.2d 98 (Ind. 2000); Matter of Barnes, 691 N.E.2d 1225 (Ind. 1998).

For the numerous violations committed by respondent, he is suspended from the practice of law for twelve (12) months, effective December 1, 2005. Respondent may only be reinstated to the practice of law upon his affirmative demonstration of meeting each of the requirements of Ind. Admission and Discipline Rule 23, Section 4, and that he is fit to resume the practice of law.

Costs of this proceeding are assessed against the respondent.