CINCINNATI INSURANCE COMPANY (Intervenor Below),

Celina Insurance Group (Defendants Suters' Insurer Below),

Keith L. Faber (Defendants Suters' Counsel Below),

Robert Suter and Betty Suter (Defendants Below), Appellants,

v.

David J. WILLS and Marcia Wills (Plaintiffs Below),

and

Elaine Mellinger (Defendant Below), Appellees.

No. 79S00–9808–CV–458.

Supreme Court of Indiana.

Oct. 6, 1999.

concurrent to his sixty-five year sentence for murder.

Judy L. Woods, Indianapolis, Indiana, Joseph T. Bumbleburg, Michael J. Stapleton, Lafayette, Indiana, Norman T. Funk, Keith A. Kinney, Indianapolis, Indiana, Attorneys for Appellants.

Norman P. Metzger, Legal Services Organization of Indiana, Kenneth J. Falk, Indiana Civil Liberties Union, Timothy J. O'Connell, UAW Legal Services Plan,

Ronald E. Elberger, George T. Patton, Jr., American International Group, Inc., American Insurance Association, National Association of Indiana Insurers, Scott Newton, Child Advocates, Inc., John A. Floreancig, Indianapolis Legal Aid Society, Indianapolis, Indiana, Attorneys for Amici Curiae.

William W. Hurst, Todd R. Ryden, Jon D. Krahulik, Indianapolis, Indiana, Jeffrey A. Cooke, Lafayette, Indiana, Attorneys for Appellees.

James D. Johnson, Defense Trial Counsel of Indiana, Evansville, Indiana, Leonard E. Eilbacher, James P. Fenton, Indiana State Bar Association, Fort Wayne, Indiana, Gregory H. Miller, Indiana Trial Lawyers Association, The Ass'n of Trial Lawyers of America, Crawfordsville, Indiana, William F. Harvey, Steven C. Shockley, Maggie L. Smith, In-House Insurance Counsel, Stephen J. Peters, Richard Winegardner, Marjorie H. Lawyer–Smith, Indiana Chamber of Commerce, Indiana Legal Education Foundation, Inc., American Corporate Counsel Association, Cinergy Services, Inc., Indiana Manufacturers Association, Insurance Institute of Indiana, Inc., Association of Life Insurance Companies, Ronald Gifford, Elizabeth Cierzniak, State Farm Mutual Automobile Ins. Co., Indianapolis, Indiana, Attorneys for Amici Curiae.

## ON PETITION FOR EMERGENCY TRANSFER

BOEHM, Justice.

This case deals with the increasingly common practice of defense of claims litigation by insurance company house counsel. We hold that an insurance company does not necessarily engage in the unauthorized practice of law when it employs house counsel to represent its insureds and that attorneys who are employees of an insurance company do not assist the insurer in the unauthorized practice of law when they represent the insureds. We

also find no inherent conflict in such an arrangement but agree that conflicts may arise. For that reason, among others, accurate disclosure of the arrangement is required. Finally, we hold that the use of a law-firm-like name, specifically "Berlon & Timmel," to describe employee-attorneys is prohibited by Professional Conduct Rule 7.2 because it misleadingly suggests that they are outside counsel.

### Factual and Procedural Background

David and Marcia Wills (the "Wills") asserted personal injury claims against Elaine Mellinger and Betty Suter.[1] Suter was insured by Celina Insurance Group, who selected its house counsel, Keith Faber, to defend Suter. Suter was advised that although Faber was employed and paid by Celina, his ethical obligations were owed to Suter alone. After consultation with another attorney, Suter agreed to the representation.

The Wills moved to disqualify Faber as Suter's counsel on the ground that his representation of Suter resulted in Celina's unauthorized practice of law. Cincinnati Insurance Company then moved to intervene, claiming an interest in the Wills' motion to disqualify Faber based on Cincinnati's practice of providing Indiana counsel for its insureds through Berlon & Timmel, which it described as a "captive law firm." The trial court granted Cincinnati's motion to intervene, and the subsequent record established that Berlon & Timmel is staffed exclusively by employees of Cincinnati who represent only Cincinnati's insureds and Cincinnati itself.

The trial court concluded that Celina engaged in the unauthorized practice of law by providing representation of its insureds through house counsel, and that Faber violated Professional Conduct Rule 5.5(b) by assisting Celina in the unauthorized practice of law. Accordingly, the trial court issued an order on June 11, 1998, granting the Wills' motion to disqual-

---

1. Robert Suter, Betty's husband was also named as a defendant. Mr. Suter is deceased. All references in this opinion are to Betty Suter.

ify Faber "so long as he continues to be an employee or agent of Celina Insurance Group such that his participation aids and abets the unauthorized practice of law by Celina." The trial court also addressed the "captive law firm" issue raised by Cincinnati's intervention and concluded that Cincinnati, in addition to the unauthorized practice of law, also engaged in deceptive practices by using the name "Berlon & Timmel." Finally, the trial court found that the attorneys employed by Cincinnati were participating in deceptive practices and aiding the unauthorized practice of law. The trial court ordered both Celina and Cincinnati to stop "any and all practices and activities that could, under the findings of this order, be considered to constitute the unauthorized practice of law ...," and found that Cincinnati "should close" its Indianapolis office operated as Berlon & Timmel.

After the Court of Appeals stayed the trial court's orders, but before any decision on the appeal, Celina and Faber petitioned for immediate transfer to this Court under Appellate Rule 4(A)(9), and transfer was granted.

### I. Jurisdiction of the Trial Court

■ A trial court may disqualify an attorney for a violation of the Rules of Professional Conduct that arises from the attorney's representation before the court. *State v. Romero*, 578 N.E.2d 673, 676–77 (Ind.1991) (disqualifying former prosecutor who attempted to represent a defendant in a matter substantially related to a prior prosecution without the State's consent in violation of Professional Conduct Rule 1.11's duty to maintain confidences of the State, his former client). The trial court's authority has been described as necessary to prevent "insult and gross violations of decorum," and that authority is limited to

attorneys appearing before the court. *McQueen v. State*, 272 Ind. 229, 231, 396 N.E.2d 903, 904 (1979). More precisely, the authority of the trial court is limited to disqualification in the case before the court. Disqualification of Faber in the suit by the Wills against Suter was within the trial court's jurisdiction in this case.

■ The trial court's order was not limited to Faber's representation of Suter, however. The order also directed Celina and Cincinnati to cease their representation of all other Indiana insureds by employee-attorneys based on perceived violations of the Rules of Professional Conduct. This sweeping remedy is available only through exercise of this Court's original jurisdiction over all matters with reference to the unauthorized practice of law. IND CONST. Art. VII, § 4; Ind. Admission and Discipline Rule 24; Ind. Appellate Rule 4(A)(3). Available procedural routes to raise this general issue include reference to the Disciplinary Commission and an original action in this Court pursuant to Admission and Discipline Rule 24, but not a proceeding in a trial court. Moreover, the trial court's order as to Faber's disqualification is moot because Suter's interest in this case has been resolved through settlement. Despite these jurisdictional defects, the issue is within the original jurisdiction of this Court, and is fully developed by the parties and amici curiae. Because the issue is of importance to many members of the Bar and their clients and affects a number of pending cases, we granted transfer under Appellate Rule 4(A)(9) to resolve the issue on its merits.[2]

### II. House Counsel's Ability to Represent Policyholders

Three distinct issues are presented by the use of house counsel to defend liability

---

**2.** There is no case or controversy requirement limiting the jurisdiction of this Court as Article III of the U.S. Constitution restricts the jurisdiction of federal courts. Nevertheless, in many circumstances this Court has refrained from addressing issues that may be mooted by procedural or other threshold issues, even if there is no constitutional require-

ment to do so. *See, e.g., Price v. State*, 622 N.E.2d 954, 958 (Ind.1993). However, this case does not involve invalidating an action of another branch of government or otherwise challenging the action of a co-equal branch. Rather it addresses issues that are indisputably within the power of the judiciary and specifically within the power of this Court.

claims against policyholders. First, some courts have seen the issue, as the trial court did here, as whether use of house counsel constitutes the unauthorized practice of law by the employer-insurer. *See, e.g., Gardner v. North Carolina State Bar,* 316 N.C. 285, 341 S.E.2d 517 (1986). Second, other courts have viewed this problem as turning on whether there is an inherent conflict in the representation such that it is a violation of the Rules of Professional Conduct for the house lawyer to proceed. *See, e.g., In re Rules Governing the Conduct of Attorneys,* 220 So.2d 6 (Fla.1969). Finally, even if such an arrangement may be consistent with the Admission and Discipline Rules, the Rules of Professional Conduct and any applicable statutes, there remains the question whether the representation was properly entered into in the specific case.

Whether an insurance company may properly employ salaried attorneys to represent insureds in claims litigation has been addressed by ten states through court decisions and by the American Bar Association[3] and ten other jurisdictions in ethics opinions.[4] Eight of the ten state courts and one federal circuit have concluded that it is permissible for an attorney employed by an insurance company to represent the company's insureds, but

have reached that result through a variety of paths.[5] Two states have disapproved of the arrangement, one focusing on the potential conflict in interest between the insurer and the insured and the second on a statutory bar against the practice of law by a corporation. *American Ins. Ass'n v. Kentucky Bar Ass'n,* 917 S.W.2d 568 (Ky. 1996); *Gardner,* 341 S.E.2d at 517.

For the reasons stated below, we now hold, consistent with the majority of state courts that have addressed the issue, that (1) insurance companies do not necessarily engage in the unauthorized practice of law when house counsel represent their insureds in claims litigation and (2) attorneys who are employees of insurance companies do not necessarily trigger an impermissible conflict in violation of the Rules of Professional Conduct when they appear as counsel to defend claims against the companies' policyholders.

### A. *Disclosure*

As a preliminary matter we address the Wills' contention that Faber's representation of Suter was improper because Suter was not given notice that Celina could appoint house counsel to represent her rather than an outside attorney. Suter's

---

**3.** ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 282 (1950).

**4.** Alabama Ethics Op. RO–81–533; Arizona Ethics Op. 75–4 (1975); California Standing Comm. on Prof'l Responsibility and Conduct, Formal Op. No.1987–91; Colorado Bar Ass'n, Formal Ethics Op. 91 (1993); Illinois State Bar Ass'n, Advisory Opinion on Prof'l Conduct, Op. No. 89–17 (1990); Michigan Ethics Op. CI–1146 (1986); New Jersey Supreme Court Comm. on Unauthorized Practice, Op. No. 23, (1984); New York State Bar Ass'n, Prof'l Ethics Comm. Op. 109 (1969); Texas Ethics Op. 167 (1958); Virginia State Bar, Legal Ethics Op. No. 598 (1985).

**5.** Several decisions hold that the employment relationship between the insurance company and the attorney is not a per se violation of the Rules of Professional Conduct. *See In re Rules Governing the Conduct of Attorneys,* 220 So.2d at 6 (rejecting proposed Rule of Con-

duct prohibiting the practice); *Petition of Youngblood,* 895 S.W.2d 322 (Tenn.1995). Some find the practice permissible because of the alignment between the insured's interests and the insurance company's interests. *Kittay v. Allstate,* 78 Ill.App.3d 335, 33 Ill.Dec. 867, 397 N.E.2d 200, 202 (1979) (corporation may employ attorneys "in and about its own immediate affairs"); *Strother v. Ohio Casualty Insurance Company,* 14 Ohio Opinions 139 (1939) *aff'd without opinion by* Court of Appeals. Others rely on a combination of the above reasoning. *See King v. Guiliani,* 1993 WL 284462 (Conn.Super.1993); *Coscia v. Cunningham,* 250 Ga. 521, 299 S.E.2d 880 (1983); *In Re Allstate Ins. Co.,* 722 S.W.2d 947 (Mo.1987) (en banc). *See also Joplin v. Denver–Chicago Trucking Co.,* 329 F.2d 396 (8th Cir.1964); *United Services Auto. Ass'n v. Zeller,* 135 S.W.2d 161 (Tx.Civ.App.1939); *Utilities Ins. v. Montgomery,* 134 Tex. 640, 138 S.W.2d 1062 (Tx.Com.App.1940).

policy provided: "If a claim is made or suit is brought against 'insured' . . . we [Celina] will: . . . [p]rovide a defense at our expense by counsel of our choice . . .," clearly disclosing the insurance company's prerogative to choose an attorney for the insured. Only by failing to comment on the issue at all does this language deal with the point raised by the Wills that the "counsel of our choice" may be an employee of the insurer. As a general proposition, adequate disclosure is a matter in the first instance properly addressed through administrative regulation. The insurance commissioner may choose to require more explicit notice to the insured at the time the policy is taken out that "counsel of our choice" could or will include house counsel. And a policyholder aggrieved by nondisclosure of this arrangement at the time of issuance is free to assert whatever claim is thought to arise from that circumstance. But this issue provides no basis for disqualification in this case. Suter did not complain of Celina's assignment of Faber to her case and stated that she was satisfied with Faber's representation. Accordingly, the quality of Suter's notice presents no issue here.

### B. *Unauthorized Practice of Law*

■ The trial court reasoned that: (1) the attorney-agents of Celina are engaged in the practice of law; (2) Celina, a corporation, can act only through agents; (3) the acts of the attorneys are those of Celina; therefore (4) Celina is engaged in the practice of law. The trial court went on to conclude that Celina's practice of law was unauthorized because Indiana's professional corporation statute implicitly prohibits general business corporations and insurance companies from practicing law. A variant on this theme was adopted by the Kentucky Supreme Court in *American Insurance Association v. Kentucky Bar Association*, where it reasoned that "a corporation cannot lawfully engage in the practice of law. . . . Moreover, a corporation[ ] cannot obtain license to practice law, since it is wholly incapable of acquiring the educational qualifications necessary to obtain such license, nor can it possess in its corporate name the necessary moral character required therefore." 917 S.W.2d 568, 571 (Ky.1996) (citations omitted).

Unlike some other states, Indiana has no express statutory prohibition against a corporation's practicing law.[6] There are, however, many restrictions either explicitly or implicitly imposed by the Rules of Professional Conduct on the forms of business entities available to an attorney for the practice of law. Thus, neither an insurance company nor a general business corporation can simply employ lawyers and hold them out to the public as offering legal services. Whether or not such an activity would involve the entity in the unauthorized practice of law, the Rules of Professional Conduct provide explicit limitations on the persons with whom a lawyer may share fees and form partnerships.[7]

---

**6.** The Supreme Court of North Carolina held that a corporation engaged in the unauthorized practice of law because it appeared, through its employees, as an attorney for the insured. This appearance by the insurance corporation violated a North Carolina statute that specifically prohibited corporations from practicing law. "It shall be unlawful for any corporation to practice law or appear as an attorney for any person. . . ." N.C. GEN.STAT. § 84–5 (1995). The court also relied on North Carolina case law that explicitly held where a corporation's employees perform acts, they are the acts of the corporation. *State v. Pledger*, 257 N.C. 634, 127 S.E.2d 337, 340 (1962). Indiana has no similar statute or common law doctrine, except to the extent the common law reflects standard respondeat superior doctrine.

In some states with a statutory prohibition against a corporation's practicing law an exception provides for representation of the corporation itself. *See* 705 ILL. COMP. STAT. 220/1 & 5 (West 1997) (formerly codified at ILL.REV. STAT ch. 32, par. 411 & 415 (1977)); *see also Kittay v. Allstate Ins. Co.*, 78 Ill.App.3d 335, 33 Ill.Dec. 867, 397 N.E.2d 200, 202 (1979).

**7.** There may also be restrictions on the entity's power under the statutes or articles of incorporation under which it is organized, but none are claimed to be applicable here.

Ind. Prof. Cond. R. 5.4(a) & (b). Additionally, the Rules prohibit a lawyer from practicing law in a professional corporation or other association if a nonlawyer owns any interest, is a director or officer or otherwise has the right to direct or control the lawyer's professional judgment. Prof. Cond. R. 5.4(d).[8] Justice Dickson suggests that there would be no recourse against a corporation that simply employed licensed attorneys and sold their services to the general public. 717 N.E.2d 169 (Ind.1999). If this form of business organization violated, for example, the prohibition against sharing the profits of the practice, the attorneys would be subject to discipline up to and including having their licenses suspended or revoked. And if unlicensed persons did the same thing, those people, and presumably their accomplices and the organization employing them, would be subject to the same sanctions as any other person practicing without a license, including criminal prosecution. Indiana Code § 33–1–5–1 criminalizes the practice of law by a "person" who is not an attorney. "Person" includes corporations, partnerships and other legal entities. *See id.* §§ 35–41–1–22 (defining "person") & 35–41–1–3 (applying definition to all statutes relating to penal offenses). *See also id.*

§ 33–21–2–1 (the practice of law by a person who is not an attorney is prohibited).

Despite the absence of a statute addressing a corporation's practicing law, for decades courts and commentators alike have agreed that it is unlawful for a corporation to practice law in Indiana.[9] Over sixty years ago we were told that "[t]he general rule that a corporation cannot practice law seems to be well settled in the United States today." David Gleber, *Attorney and Client—Unauthorized Practice of Law*, 13 Notre Dame Lawyer 289 (1938). Addressing the State Bar Association, one Indiana commentator stated:

> Of course, it is unlawful for a corporation to practice law. It is now unlawful, and it has always been unlawful for a corporation to practice law. The very statement of the proposition is its answer. It is just as sensible, it seems to me, to repeal the law of gravitation or to pass a law making it unlawful for objects to fall to the ground.

Glen D. Peters, *Bootleggers in Law*, 7 Ind. L.J. 46, 53 (1931). This rule was apparently so well settled that those asserting it felt no need to provide any basis for it other than the "common law prohibition of the practice of law by a corporation." Gleber, *supra* at 290. And in more recent times this Court has stated, although in a

---

8. In 1981 the ABA Commission on Evaluation of Professional Standards proposed amending Rule 5.4(d) to permit "all forms of law practice, and all financial arrangements for providing legal services, so long as all participating lawyers met their professional responsibilities under the other Model Rules." 2 Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering· A Handbook on the Model Rules of Professional Conduct § 5.4:101 (1985 & Supp.1991). The ABA House of Delegates rejected the proposed rule in favor of the version currently found in Indiana's Rules of Professional Conduct.

9. The perception among lawyers that banks and trust companies were encroaching on the domain of lawyers by executing wills and trusts was the principal focus of this issue in the 1930s. *See* David Gleber, *Attorney and Client—Unauthorized Practice of Law*, 13 Notre Dame Lawyer, 289, 289 n. 1 (1938) (collect-

ing state supreme court cases decided between 1932 and 1937). "[T]he bootlegger in law, *that person or institution who is fitted neither by training, experience or character,* to practice law, but notwithstanding such lack, not only attempts to practice law, but actually solicits such business. I mean the bank, the so-called trust company ..." Glen D. Peters, *Bootleggers in Law*, 7 Ind. L.J. 46, 47 (1931). *See also* Edward C. Massa, *Hazards of the Legal Profession*, 7 Notre Dame Lawyer 82, 82 & 85 (1931) ("The field which originally belonged solely to the attorney has been narrowed down, especially of late years, ... mak[ing] it increasingly difficult for lawyers to earn reasonable living." Banks, trust companies, and insurance companies were among the "innumerable instances" of the "encroachment by various unauthorized persons and agencies upon the field of the law").

quite different context, that "[a] corporation is a creature of statute and can neither practice law nor act in person." *Department of Pub. Welfare v. Chair Lance Serv., Inc.*, 523 N.E.2d 1373, 1377 (Ind. 1988).

It is not obvious, however, precisely what it means to say a "corporation may not practice law," or why that is true in every potential sense of that phrase.[10] The modern statements of the "rule" that a corporation may not practice law typically reflect no more than the point that only a natural person can be admitted to the bar. This is of course correct. The admission provisions requiring a lawyer to graduate from law school and to sit for the bar exam do not contemplate a legal entity as a bar candidate.[11] As the Supreme Court of Georgia put it, "[i]t is manifest from these [admission] provisions of the law that no corporation can be licensed to practice law in this state. No corporation can comply with the requirements which are imposed upon applicants as prerequisites to enable them to obtain license to practice law." *Boykin v. Hopkins*, 174 Ga. 511, 162 S.E. 796, 800 (1932). Similarly, it is clear that only licensed attorneys may lawfully "practice law." Indeed, as already noted, the unlicensed practice of law by any person is criminal.

From these general propositions in concert with conventional agency principles

the Wills and the trial court concluded that the insurer-employer of a licensed attorney is unlawfully practicing law. However, it is clear that some provisions of our Rules and statutes assume or contemplate that entities that cannot sit for the bar may nonetheless employ lawyers who practice law and in that sense "practice law" themselves. All agree that a group of attorneys may lawfully organize as a partnership, limited liability partnership or professional corporation. Each of these legal entities has individuals who are shareholders, partners or employees of the organization and who, as licensed lawyers, also practice law. Despite the obvious fact that neither the partnership nor the professional corporation graduated from law school, etc., there is no claim raised that any of these entities is engaged in the unauthorized practice of law. Moreover, our Rules of Professional Conduct at least implicitly confirm that a partnership's "activities" may consist of the practice of law by, for example, Rule 5.4(b)'s prohibition against formation of such a partnership with a non-lawyer partner.

The statutory provisions for professional corporations are also relevant. The trial court pointed to Indiana Code § 23–1.5–2–. 3 in support of its conclusion that Celina, an insurance company, engaged in the unauthorized practice of law. This section authorizes professional corporations to be

---

10. Prior to the 1961 American Bar Association opinion approving the professional corporation form, "[t]he traditional stance of the organized bar was that to incorporate a law practice was to treat law practice as a business rather than a profession, and thus is was prohibited." CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 16.2.4 (1986). The formation of partnerships did not "treat law practice as a business" apparently because law firms were viewed as collections of sole practitioners. *Id.* § 16.2.1. As early as the first quarter of the nineteenth century lawyers began practicing in partnerships although most lawyers practiced as individuals. JAMES WILLARD HURST, THE GROWTH OF AMERICAN LAW 306 (1950). By 1928 partnerships were well accepted by the organized bar and the American Bar Association adopted Cannon 33 which stated "[p]artnerships among lawyers for the

practice of their profession are very common and are not to be condemned." HENRY S. DRINKER, LEGAL ETHICS 203–04 (1953).

11. The Admission and Discipline Rules anticipate that only natural persons will be admitted to the Bar to practice law. Rule 13 requires applicants to graduate from an ABA approved law school and complete two cumulative semester hours of legal ethics or professional responsibility; Rule 17 requires applicants to pass a Bar examination and the Multistate Professional Responsibility Examination; and Rule 12 requires that the Board of Law Examiners certify to the Supreme Court that the applicant has been found to possess the necessary good moral character and fitness.

formed to render professional services. Specifically, it provides for a legal entity that is authorized "to render services that may legally be performed only by an attorney." IND.CODE § 23–1.5–2–3(3) (1998). This provision seems to assume that the professional corporation, by· "rendering services" will itself be practicing law, just as Rule 5.4(b) describes a partnership as practicing law. The practice is not unauthorized, however. The professional corporation statute goes on to provide that "[a] professional corporation may render professional services only through individuals permitted to render such services in Indiana." *Id.* § 23–1.5–2–5. This statute reinforces the conclusion that entities may lawfully "render" legal services if the activities are conducted by a licensed attorney. It also authorizes professional corporations to conduct a general practice of law. We do not agree, however, that it impliedly prohibits employees of a general business corporation or an insurance company from practicing law. Rather, it simply leaves them where it found them, subject to the confinements of other rules but not inherently incapable of practicing law.

Finally, the Rules also explicitly recognize that corporations may have house counsel. The definition of a "law firm" includes "lawyers employed in the legal department of a corporation or other organization." Prof. Cond. R. preamble. Rule 1.13 by its terms applies to attorneys "employed or retained" by a corporation or other organization. As a result, employee-attorneys are subject to the same obligations, including supervision, etc., that apply to attorneys in other forms of practice. There is no dispute that properly admitted employee-attorneys practice law in representing their employer and as such are subject to the Rules of Professional Conduct.[12] Moreover, as elaborated in Part II.C., it is not uncommon for house counsel to represent both the corporation and its officers, directors or other employees *in matters where the potential for conflict does not preclude common representation.*[13] There, as in the insurer situation found in this case, the attorney's obligations run to both clients. Both situations present the possibility of a conflict between the interests of the two clients. Despite that possibility, in many cases the matter is resolved without any significant divergence of those interests, and the interests of economy and simplicity clearly justify the practice.

■ Notwithstanding the continuing ban, indeed criminalization of "practicing law" by any "person" not an attorney, the Rules of Professional Conduct, statutes and well accepted forms of practice clearly imply that the entity itself is not unlawfully practicing law as long as the activity is conducted through licensed attorneys.[14] It *is of course true that a legal entity can be responsible for the professional actions of its partners, employees and agents under standard doctrines of respondeat superior, and in that sense is viewed as engaged in the activity.* But that does not mean the entity unlawfully practices law any more

12. In *Matter of Contempt of Mittower,* this Court held a disbarred attorney in contempt for acting as "general counsel" for an estate planning business. 693 N.E.2d 555, 558 (Ind. 1998) ("The practice of law includes … legal formalities, negotiations, or proceedings" on behalf of others.); *see also* WOLFRAM, *supra,* § 13.7.3 (house counsel are fully subject to the disciplinary powers of the state in which they practice).

13. A typical such situation is a claim against both the organization and the employee where there is no dispute that the organization is obligated and financially able to in-

demnify the employee. The interests of the two, like those of insurer and insured, are aligned and the cost and complication of multiple attorneys is unnecessary.

14. Indiana has no provision for registration of house lawyers under restricted licenses. *Cf. e.g.,* Ohio Gov. Bar R. VI § 4 (permitting an attorney admitted to the practice of law in another state to register under "corporate status" and perform legal services in Ohio solely for a nongovernmental employer as long as the attorney is a full-time employee of that employer).

than Federal Express unlawfully pilots airplanes. Rather the practice of law, the piloting of airplanes and many other activities are required to be performed by licensed professionals. And, as a general proposition, where the law requires a license, agency doctrine permits an unlicensed legal entity to employ licensed agents to perform those acts requiring a license. RESTATEMENT (SECOND) OF AGENCY § 19 cmt. d (1958). In each case the lawfulness of the entity's activities turns on whether the individual is properly licensed.

■ Regardless of whether a partnership, a professional corporation, an insurance company, or any other legal entity may be said to be practicing law in some sense, we believe the proper focus of the unauthorized practice inquiry is whether the challenged activity results in the "unauthorized" practice by the individuals involved.[15] Rather than turning on a syllogism based on a series of propositions of dubious general validity, the unauthorized practice issue boils down to whether a nonlawyer is performing tasks requiring a lawyer, or a lawyer not admitted in this State is practicing in Indiana. *See* 2 GEOFFREY C. HAZARD, JR. & W. WILLIAM HODES, THE LAW OF LAWYERING: A HANDBOOK ON THE MODEL RULES OF PROFESSIONAL CONDUCT § 5.5:102 (1985 & Supp.1998) ("Most of the law on unauthorized practice has been developed by the courts in criminal prosecutions and injunction proceedings against [nonlawyers] for practicing without a license and in civil cases attempting to hold such persons liable for malpractice where they held themselves out as lawyers.").

There is no dispute that the attorney-employee who represents the organization that employs the attorney is practicing law. There is also no dispute that the attorney in this case can properly represent his employer in connection with the Wills' claim. The only issue is whether the concurrent representation of the insured

renders the representation unauthorized or makes it somehow the practice of law by someone other than the attorney. Given that the attorney's representation of the insurer-employer is lawful, the representation of a policyholder whose interests are essentially aligned with the insurer's does not inherently result in unauthorized practice by either the insurer or the attorney. Nor, in our view, is this tantamount to offering legal services to the general public. Suter undoubtedly perceived herself as buying insurance coverage and only incidentally acquiring the prospect of legal services. Indeed, if outside counsel were employed to defend her claim, Celina would have been offering her the same package of services from her point of view.

In sum, as explained in Part II.C., there may be many other reasons why an employee-attorney may not concurrently represent both the employer and someone else, but the attorney's status as an employee of an insurance company or any other legal entity is in and of itself no bar. We conclude that Celina does not necessarily engage in the unauthorized practice of law when its employed attorney represents its insureds. Accordingly, Faber does not assist Celina in the unauthorized practice of law when he represents insureds. Our conclusion is the same with respect to Cincinnati and its employed attorneys on the issue of the unauthorized practice of law.

### C. The Representation is not Inherently Problematic

There are plainly many situations where representation of both an insured and the insurer is inconsistent with the Rules of Professional Conduct. However, the issue in this case is whether these potential conflicts are so inherent in the representation that it is a violation of the Rules of Professional Conduct to enter into the arrangement in the first place. We think not.

---

**15.** As Admission and Discipline Rule 1 states, the Bar of this state consists of "attorneys" who are duly admitted, not the entities of which they are owners or employees, or with which they have some other relationship.

### 1. The Insurance Company as Co–Client

As a related matter, there is extensive debate in the literature as to whom the attorney represents in this situation.[16] Specifically, whether the attorney is an employee or an outside lawyer, the debate focuses on whether only the insured or both the insured and the insurer should be viewed as the client. We think it unrealistic to ignore the client relationship with both. Joint representation may become problematic, particularly if issues of disclosure of confidences arise. For example the attorney may gain information from the policyholder-client that may affect the insurer-client's coverage obligation. But that is no basis for prohibiting the arrangement in all cases. Whatever issues joint representation raises appear to be wholly independent of the attorney's status as an employee of the insurer or a member of a law firm. Second, there is nothing inherently wrong in common representation of two parties where their interests are aligned. Professional Conduct Rule 1.7 provides direction "[w]hen representation of multiple clients in a single matter is undertaken . . . ." In this respect, the insured and insurer present no qualitatively different situation from any other pair of commonly represented clients.

If a conflict arises, it will have to be handled, and there are a variety of means to do that. But a vast number of claims have been and presumably will be handled with no significant issue between the insurer and the policyholder. Interests of economy and simplicity dictate that this be permitted to continue. Any abuses can be handled on a case-by-case basis rather than by adoption of the broad prohibition the Wills seek. Although issues may arise in dual representation, none are apparent in this case. In any event, Celina has by contract subordinated its interests as a client to those of Suter. Presumably, this resolves by agreement the priority of counsel's obligations if, for example, counsel learns of information that affects the insurer's and the policyholder's interests differently.

### 2. Specific Rules of Professional Conduct

■ The Rules of Professional Conduct prohibit an attorney from representing a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person. Prof. Cond. R. 1.7(b). In addition, the professional independence of a lawyer is not impaired so long as the lawyer does not "permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment." Prof. Cond. R. 5.4(c). "Where someone other than the client pays the lawyer's fee or salary, or recommends employment of the lawyer, that arrangement does not modify the lawyer's obligation to the client." Prof. Cond. R. 5.4 cmt.

The Wills contend that Faber violated each of these as well as Rules 1.8(f) (no compensation from those who interfere with the lawyer's independence); 7.3(f) (lawyer shall not compensate those who recommend employment); 5.4(a) (no sharing of legal fees with nonlawyer); and 5.4(d)(2) and (d)(3) (no practice in an association or a professional corporation if nonlawyer holds interest). All of these contentions relate to the inherent inappropriateness of the arrangement. The trial court's order includes detailed discussions of the Wills' claims and the evidence they offered to support those claims.[17] None of

16. *See, e.g.,* Stephen L. Pepper, *Applying the Fundamentals of Lawyers' Ethics to Insurance Defense Practice,* 4 CONN. INS. L.J. 27 (1997); Charles Silver, *Does Insurance Defense Counsel Represent the Company or the Insured?,* 72 TEX. L.REV. 1583 (1994); *see also* Nancy J.

Moore, *The Ethical Duties of Insurance Defense Lawyers: Are Special Solutions Required?,* 4 CONN. INS. L.J. 259, 261 n. 7 (1997) (collecting additional articles).

17. The trial court found no violation of Rules 1.7(b) and 7.3(f). It stated that it was "un-

the evidence was specific to Faber's relationship to Celina. Rather it focused on the general issue of house counsel as counsel for policyholders. Specifically, as the trial court noted, the Wills "presented nothing beyond mere allegation that Celina directs or regulates Mr. Faber's professional judgment based upon the employment relationship." The trial court found that Faber's employment by Celina did not inherently result in any unethical practice or conflict of interest.

Amicus Curiae, the Defense Trial Counsel of Indiana, argued before this Court that house counsel are less aware of the Rules of Professional Conduct and the discipline matters decided by this Court than attorneys who practice in traditional firms. They point to no evidence in support of this assumption and we decline to adopt it. All members of the Bar accept their obligations to their clients and the Court under the Admission and Discipline Rules and the Rules of Professional Conduct. The vast majority of practicing attorneys discharge their obligations without complaint over an entire career. As to the remainder, this state, like all others, has in place disciplinary procedures to protect the public. In *Groninger v. Fletcher Trust,* we rejected the plaintiff's claims that "one who is the regular attorney for a trust company will be more loyal to his employer than to the trust for which he is rendering legal services...." 220 Ind. 202, 208, 41 N.E.2d 140, 142 (1942). Over half a century later we still agree with the trial court's conclusion that "[t]here is nothing to suggest that attorneys who are house counsel for insurance corporations are ignorant or numb to the expectations of the Rules of Professional Conduct."

In this respect we join the several states that reject the contention that house counsel representation of insureds presents an inherent conflict in violation of the Rules of Professional Conduct. "Compliance

with the Code in all cases will be measured against the Code itself, rather than some variation of the 'outside counsel' practice, which, depending upon the circumstances of the particular situation, may not conform to the requirements of the Code." *Petition of Youngblood,* 895 S.W.2d 322, 328 (Tenn.1995); *see also In Re Allstate Ins. Co.,* 722 S.W.2d 947, 953 (Mo.1987) (en banc) ("There is no basis for a conclusion that employed lawyers have less regard for the Rules of Professional Conduct than private practitioners do.") In rejecting a proposed conduct rule prohibiting house counsel from representing insured, the Supreme Court of Florida found no basis for distinguishing between house counsel and outside counsel. It observed that all attorneys engaged to represent insureds pursuant to an insurance contract face the same ethical decision: an attorney, whether house counsel or outside counsel, "is employed to represent two clients." *In Re Rules Governing Conduct of Attorneys,* 220 So.2d at 7. The court concluded that the lawyer owes "undivided loyalty to the client whom he purports to serve, not to the third party source of his compensation." *Id.* at 8. The Supreme Court of Georgia observed that "both [attorneys employed and compensated on a case by case basis] and staff counsel owe duties to and therefore represent both the insurer and the insured." *Coscia v. Cunningham,* 250 Ga. 521, 299 S.E.2d 880, 881 (1983).

It is of course true that conflicts may arise in the course of representation of an insured by house counsel. The same is true if the insurer pays for a law firm to represent its insured. In either case there may be a conflict based on coverage disputes, the risk of a claim in excess of policy limits, the acquisition of information from the insured that bears on coverage, or a variety of other items. If such a situation arises retention of new counsel to represent the policyholder may be ei-

---

willing to find a per se violation" based on Faber's employment status for Rules 1.8(f) and 5.4(c). It further stated that the Wills'

claim that Faber violated Rule 5.4(a) was "without merit" and it did not address Rule 5.4(d)(2) or (d)(3).

ther preferred or necessary. But this potential does not require the abandonment of a mode of doing business that the insurer finds efficient and cost effective, and the insured knowingly accepts. Presumably ultimately the marketplaces of ideas and premium charges will sort this out and strike a balance between claimed cost advantages and perceived desirability of wholly independent counsel. We find nothing in our Rules of Professional Conduct to prevent the parties from continuing to duke this issue out in those marketplaces without interference from the judiciary. If and when abuses are perceived by policyholders they may seek the aid of the courts or the insurance commissioner. Our point is not, as Justice Dickson concludes, that two wrongs make a right. 717 N.E.2d at 183. Rather it is that the potential for conflict is inherent in the insurer-insured relationship regardless of whether the attorney is ˙house counsel or outside counsel, and the employment relationship is not qualitatively different in this respect.

Finally, as already noted, apart from the unauthorized practice issue, most of the problems identified by the Wills exist whether house counsel or outside counsel are used. If there is any difference between house and outside lawyers in this respect it is quantitative and not qualitative and varies from situation to situation. Employee-attorneys may be subject to pressures from their employer. But it is also unrealistic to suggest that an outside lawyer is immune from the blandishments of a client, particularly a high volume client that may be the source of a significant portion of the firm's revenues. For a decade the legal press has been full of stories of various cost containment programs implemented by insurers and others to reduce their outside legal expenses. Ultimately all attorneys are bound by their professional obligations to place the interests of their policyholder-client ahead of their own if pressure from an employer or a co-client insurer conflicts with those of the policyholder. We will not assume that

an attorney employed by an insurance corporation is in violation of any of the Rules based solely on that employment relationship. The full range of disciplinary sanctions and civil remedies are available to deal with hopefully isolated instances of trouble. This is true whether the attorney is an employee of an insurance company, a partner in a firm significantly dependent on the insurer's business or a lawyer relatively free of direct economic pressure.

In sum, we hold that an insurance company does not engage in the unauthorized practice of law when it employs attorneys to represent insureds and that attorneys employed by insurance companies may represent insureds under circumstances and to the extent permitted by their ethical obligations defined in the Admission and Discipline Rules and the Rules of Professional Conduct. This holding does not, as Justice Dickson suggests, turn on the fact that the employer is an insurance company; it depends on the commonality of interests of the jointly represented clients. 717 N.E.2d at 166.

### D. *Protection of the Public*

■ The Court's ability to prohibit the unauthorized practice of law and regulate the conduct of licensed attorneys "emanates from the need to protect the public from those not properly licensed or otherwise qualified to act as attorneys." *State ex rel. Disciplinary Commission of the Supreme Court of Indiana v. Owen*, 486 N.E.2d 1012, 1014 (Ind.1986); *see also Hulbert v. Mybeck*, 220 Ind. 530, 532, 44 N.E.2d 830, 831 (1942). In addition, the preamble to the Rules of Professional Conduct cautions that "[t]he profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar."

As demonstrated by this case, free access to the market of legal services and the protection of the public is a delicate balance with results that are not always

predictable. As noted in Part II.C.2., in the realm of insurance defense, the public may ultimately reap the benefits of better service at lower cost through the use of house counsel. Although we find no inherent detriment to the general public in the defense of insurance claims by house counsel, we reiterate the fact that the Rules of Professional Conduct, the disciplinary procedures, and other civil remedies exist for the protection of all clients, whether the attorney is house counsel, a sole practitioner, affiliated with a traditional law partnership, or anything else.

### III. The Use of "Berlon & Timmel"

The trial court found that the use of the name Berlon & Timmel by Cincinnati's attorneys was deceptive in violation of Professional Conduct Rule 7.2 because "that name implied independence." That Rule provides: "[a] lawyer shall not practice under a name that is misleading as to the identity, responsibility, or status of those practicing thereunder, or is otherwise false, fraudulent, misleading, deceptive. . . ."

The attorneys who work at Berlon & Timmel are employed by Cincinnati and handle only matters for Cincinnati or its policyholders. No one contends that the attorneys perform legal services for the general public. All Berlon & Timmel clients are informed that the attorneys are employed by Cincinnati at the beginning of the representation. Berlon & Timmel's letterhead includes the following language printed along the bottom of the page: "Berlon & Timmel is an unincorporated association, not a partnership, of individual licensed attorneys employed by The Cincinnati Insurance Company for the exclusive purpose of representing the Cincinnati Insurance Companies and their policyholders."

We agree with the trial court that the use of the name Berlon & Timmel implies independence and that the ordinary person would assume "Berlon & Timmel" to be some form of outside counsel. As a result it is "misleading as to the identity, responsibility, or status" of the attorneys practicing under the name.

Cincinnati contends that the disclosure language at the bottom of the letterhead is sufficient to dispel any misperception. The trial court noted that not all forms of communication include this disclosure. For example, Berlon & Timmel's phone book listing and door sign use only "Berlon & Timmel." The trial court concluded that the size and location of the disclosure was "not adequate to negate the deceptiveness resulting from the independence indicated by the firm name, the description on the office door, and the phone book listing." The court also found that the disclaimer was "susceptible to the interpretation that [Cincinnati] was not Berlon & Timmel's only employer" because it stated that "Berlon & Timmel is . . . employed by The Cincinnati Insurance Company for the exclusive purpose . . . ." not that "Berlon & Timmel is . . . exclusively employed by The Cincinnati Insurance Company. . . ."

Although similar disclosure language may be sufficient to permit sole practitioners who share office space to adopt a name that may appear as a law firm,[18] it is not sufficient in this case. The use of a firm-like name by a "captive firm" differs from sole practitioners sharing expenses in two respects. First, it may be read to imply not only a separate legal entity but also an independent status that is not enjoyed by the insurer's employees. There is greater danger for the public to be misled in permitting an insurance company to pass off its legal department as an independent entity. Second, there is at least some practical sense in permitting groups of financially independent lawyers to benefit from the economies of a shared name such as the convenience of one sign on shared offices or the cost savings of one advertise-

---

**18.** *See* California Standing Comm. on Prof'l Responsibility and Conduct, Op.1986–90 (each lawyer must discloses affirmatively that he or she is, in fact, a sole practitioner).

ment. Cincinnati provides no rationale for using "Berlon & Timmel" as a designation for its house counsel. Perhaps the name was adopted without much reflection. In any event, it is difficult to come up with a proper reason for this designation and we conclude that it is improper to create the perception of a law firm at least partially independent of Cincinnati.

For these reasons we agree with the Supreme Court of Tennessee that the use of captive law firm names is not permissible under the Rules of Professional Conduct. That court reasoned that "[t]he representation that the attorney-employee is separate and independent from the employer is, at least, false, misleading and deceptive. It may be fraudulent, depending on the circumstances under which the representation is made." *Petition of Youngblood*, 895 S.W.2d 322, 331 (Tenn. 1995); *see also* Supreme Court of Ohio, Board of Comm'rs on Grievances and Discipline, Op. 95–14 (1995) (attorneys employed by an insurance company may not represent themselves to be outside counsel when they are house counsel). From the record before us, it appears that Berlon & Timmel identifies itself as an aggregate of employee-attorneys at the first contact with the policyholder. If so, the fraud conclusion may well be inappropriate here.

 Although we agree that the use of a law-firm-like name is improper, the trial court's finding that Cincinnati should close its Indianapolis office was too broad. It is sufficient that the Indiana attorneys practicing under the name Berlon & Timmel take immediate action to discontinue use of Berlon & Timmel or any other name suggesting a legal entity other than Cincinnati to describe their practice as employees of Cincinnati.

## Conclusion

We hold that attorneys employed by insurance companies may represent insureds under circumstances and to the extent permitted by their ethical obligations and that their employment does not necessarily constitute the unauthorized practice of law by the insurance company. We also hold that the use of a name such as "Berlon & Timmel" by attorneys employed by an insurance company violates Professional Conduct Rule 7.2. The order of the trial court is vacated.

SHEPARD, C.J., and SULLIVAN and SELBY, JJ., concur.

DICKSON, J., dissents with opinion.

DICKSON, J., dissenting

The privilege to practice law in Indiana extends only to natural persons who satisfy certain qualifications. Corporations and other organizational entities are thus prohibited from practicing law. The majority today redefines this prohibition, specifically exempting insurance companies from its application and holding that insurance companies do not necessarily engage in the unauthorized practice of law when house counsel represent insureds in liability claims litigation. The majority further holds that the representation provided by house counsel to both insurance companies and their insureds is not so inherently problematic and the interests not so inherently conflict-laden as to violate the Rules of Professional Conduct. I strongly disagree with both of these holdings.

The Indiana Supreme Court has exclusive jurisdiction in matters involving the admission and discipline of attorneys. IND. CONST. art. VII, § 4; *Matter of Fletcher*, 655 N.E.2d 58, 59 (Ind.1995); *In re Kesler*, 272 Ind. 161, 163, 397 N.E.2d 574, 575 (1979). This Court has original jurisdiction in matters relating to the unauthorized practice of law. IND. CONST. art. VII, § 4; *Matter of Contempt of Mittower*, 693 N.E.2d 555, 558 (Ind.1998); *Fletcher*, 655 N.E.2d at 59. We hold these responsibilities not for the sake of the bar, but for the sake of the public. *Id.* at 60.

This Court has explained that "[t]he practice of law is restricted to natural persons who have been licensed upon the basis of established character and compe-

tence as a protection to the public against lack of knowledge, skill, integrity, and fidelity." *Groninger v. Fletcher Trust Co.,* 220 Ind. 202, 207, 41 N.E.2d 140, 141 (1942). *See also Professional Adjusters, Inc. v. Tandon,* 433 N.E.2d 779, 783 (Ind. 1982). The license to practice law "is a privilege rather than a natural or vested right." *In re Holovachka,* 245 Ind. 483, 510, 198 N.E.2d 381, 394 (1964) (citing *In re Harrison,* 231 Ind. 665, 667, 109 N.E.2d 722, 723 (1953)). Thus, as Chief Judge Benjamin Cardozo wrote, " 'Membership in the bar is a privilege burdened with conditions.' " *People ex rel. Karlin v. Culkin,* 248 N.Y. 465, 470, 162 N.E. 487, 489 (1928) (quoting *In re Rouss,* 221 N.Y. 81, 84, 116 N.E. 782, 783 (1917)). We have long noted the conditional nature of this privilege:

> The privilege is contingent upon the faithful performance of the duties imposed upon the attorney by the society which grants him the privilege. The first and continuing requirement of an attorney is that he be of good moral character. Being of good moral character necessarily implies that he will conform to the moral standards of his profession as provided (1) by law, (2) by his oath of office and (3) by the code of ethics of the legal profession.

*Baker et al. v. Keisker,* 236 Ind. 617, 620, 142 N.E.2d 432, 434 (1957) (internal citation omitted). Dean Roscoe Pound reflected a similar sentiment:

> [W]hat we mean by the term profession when we speak of the old recognized professions (medicine, the law, ministry). We mean an organized calling in which men pursue a learned art and are united in the pursuit of it as a public service-as I have said, no less a public service because they may make a livelihood thereby. Here, from the professional standpoint there are three essential ideas-organization, learning, and a spirit of public service. The gaining of a livelihood is not a professional consideration. Indeed, the professional spirit, the spirit

of a public service, constantly curbs the urge of that instinct.

Dean Roscoe Pound, Address Before the Nebraska State Bar Association (Oct. 20, 1949), *quoted in* EDWIN M. OTTERBOURG, A STUDY OF UNAUTHORIZED PRACTICE OF LAW 2 (1951).

It is the province of this Court to determine what the practice of law is and what acts constitute the practice of law. *Mittower,* 693 N.E.2d at 558; *Matter of Perrello,* 270 Ind. 390, 398, 386 N.E.2d 174, 179 (1979). We have indicated:

> The core element of practicing law is the giving of legal advice to a client and the placing of oneself in the very sensitive relationship wherein the confidence of the client, and the management of his affairs, is left totally in the hands of the attorney. The undertaking to minister to the legal problems of another creates an attorney-client relationship without regard to whether the services are actually performed by the one so undertaking the responsibility or are delegated or subcontracted to another. . . . [M]erely entering into such relationship constitutes the practice of law.

*Id.* The Court also explained:

> [W]e do not recognize a division of the practice of law into a practice side and a business side. To manage any profession, there are incidental business elements that are a part of the total process. The performing of these business processes are a part of the total process and certainly cannot be separated and isolated from the total transaction. The conducting of the business management of a law practice, in conjunction with that practice, constitutes the practice of law.

*Id.* We have observed that "a person who gives legal advice to clients and transacts business for them in matters connected with the law in the settlement, adjustment, and compromise of claims is engaged in the practice of law." *Fink v. Peden,* 214 Ind. 584, 593, 17 N.E.2d 95, 99 (1938). *See also State ex rel. Pearson v. Gould,* 437 N.E.2d 41, 42 (Ind.1982). "Thus, the prac-

tice of law is not defined only as the giving of legal advice or acting in a representative capacity—it also had been extended by this Court to conducting the business management of a law practice." *Matter of Thonert*, 693 N.E.2d 559, 563 (Ind.1998) (per curiam).[1]

Basic to the concept of "the practice of law" and to the term "attorney" is the element of one person acting as an agent or substitute for another, that is, as a representative with regard to legal matters whether in or out of court.[2] *Nardi v. Poinsatte*, 46 F.2d 347, 348 (N.D.Ind.1931) ("The word 'attorney' in its broadest sense means a substitute or an agent."). In defining the term "attorney," Black's Law Dictionary acknowledges that "[i]n the most general sense this term denotes an agent or substitute, or one who is appointed and authorized to act in the place or stead of another. An agent, or one acting on behalf of another." BLACK's LAW DICTIONARY 128 (6th ed.1990) (citation omitted).

## A. Violation of the Unauthorized Practice of Law Statute

The majority holds that an insurance company does not necessarily engage in the unauthorized practice of law when house counsel represents insureds in liability claims litigation. I disagree and, like the trial court, am convinced that an insurance company does, in fact, engage in the unauthorized practice of law when its house counsel represents its insureds.

### 1. Statutory Law Proscribes the Unauthorized Practice of Law

Anglo–American law has a long history, dating back more than seven hundred

---

1. This Court has also provided the following definition of the practice of law:

 "The general meaning of the term, 'practice law' or 'practice of law,' is of common knowledge, although the boundaries of its definition may be indefinite as to some transactions. As generally understood, it is the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity with the adopted rules of procedure; but it is not confined to performing services in an action or proceeding pending in courts of justice, and, in a larger sense, it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court. To 'practice law' is to carry on the business of an attorney at law; to do or practice that which an attorney or counselor at law is authorized *to do and practice; to exercise the calling* or profession of the law, usually for the purpose of gaining a livelihood, or at least for gain; to make it one's business to act for, and by the warrant of, others in legal formalities, negotiations, or proceedings." *Fink*, 214 Ind. at 587–88, 17 N.E.2d at 96–97 (quoting 7 C.J.S. 703, § 3(g)) (emphasis omitted).

2. *See Thonert*, 693 N.E.2d 559 (communications to public officials undertaken in a representative capacity by the members of the attorney's office support staff during attorney's suspension, which sought to obtain benefits for individuals represented by attorney, constitutes the practice of law); *Mittower*, 693 N.E.2d 555 (acting on behalf of estate planning service constitutes practice of law); *Tandon*, 433 N.E.2d 779 (negotiating a settlement on behalf of an insured with his own insurance company of a disputed claim for loss or damages constitutes the practice of law); *State ex rel. Indiana State Bar Ass'n v. Osborne*, 241 Ind. 375, 172 N.E.2d 434 (1961) (preparing and drafting a will and giving advice as to the contents and legal effect of a will is the practice of law); *Fink*, 214 Ind. 584, 17 N.E.2d 95 (negotiating a settlement on behalf of a widow and children with a railroad on claim for death of deceased employee constitutes the practice of law); *Eley v. Miller*, 7 Ind.App. 529, 34 N.E. 836 (1893) (preparing legal instruments and contracts by which legal rights are secured although the matter may or may not be pending in a court constitutes the practice of law). *But see Gould*, 437 N.E.2d 41 (representing another in an administrative hearing before the State Employees' Appeals Commission does not constitute the unauthorized practice of law); *State ex rel. Indiana State Bar Ass'n v. Indiana Real Estate Ass'n*, 244 Ind. 214, 191 N.E.2d 711 (1963) (the employment by a real estate broker or agent of standard forms of listing agreements, earnest money contracts, propositions, options, vendors' affidavits and contracts of sale does not constitute practice of law when it only requires the use of common knowledge regarding the information to be inserted in blanks and regarding the legal consequence involved).

years, of limiting the practice of law to natural persons who meet certain qualifications. *See Rhode Island Bar Ass'n v. Automobile Service Ass'n*, 55 R.I. 122, 179 A. 139 (1935). This body of law was established in Indiana, and our statutes have explicitly proscribed the unauthorized practice of law for nearly a century. *See, e.g.*, 1913 Ind. Acts ch. 347, § 1, p. 940; Pub.L. No. 2, § 3301 (1978). In its present version, the statute provides:

> It is a Class B misdemeanor for a person to hold himself out as a practicing lawyer, to conduct the trial of a case in any court of this state, or to engage in the business of a practicing lawyer, without first having been duly admitted as an attorney-at-law by the supreme court of this state.

IND.CODE § 33–1–5–1 (1998). Another statute provides: "The practice of law by a person who is not an attorney is prohibited under IC 33–1–5." IND.CODE § 33–21–2–1 (1998). "Person" includes a corporation. IND.CODE § 35–41–1–22 (1998) (defining "person"); IND.CODE § 35–41–1–3 (1998) (applying definition to all statutes relating to penal offenses).

The Indiana Rules of Professional Conduct apply only to those persons who are admitted to the bar in Indiana. Rule 5.5 relates to the unauthorized practice of law and prohibits lawyers from "(a) practic[ing] law in a jurisdiction where doing so violates the regulation of the legal profession of that jurisdiction; or (b) assist[ing] a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law." [3] Thus, Rule 5.5(b), in regulating attorney conduct, prohibits attorneys from assisting a person, which would include corporations and other organizational entities, in the performance of activities that constitute the unauthorized practice of law.

Thus, an important distinction exists between the application of the professional rules and the application of the statute

prohibiting the unauthorized practice of law. The statute governs all persons, whether natural or legal, whether lawyers or non-lawyers. The Professional Conduct Rules regulate only the conduct of lawyers, but not that of non-lawyers, corporations, or other organizational entities. The unauthorized practice of law statute operates to prohibit conduct by both individuals and legal entities that the professional rules do not regulate. In so doing, the statute criminalizes conduct by natural *and* legal persons who are not subject to this Court's authority under the professional rules and thereby protects the public from the practice of law by individuals and entities not qualified to practice law.

The majority departs from this statutory proscription prohibiting the practice of law by legal entities not admitted as attorneys at law. Instead, it creates and announces a new judicial exemption, henceforth permitting "an unlicensed legal entity to employ licensed agents to perform those acts requiring a license." Op. at 160 (citation omitted). The majority then recognizes that "[i]n each case the lawfulness of the entity's activities turns on whether the individual is properly licensed." Op. at 160. The majority continues:

> Regardless of whether a partnership, a professional corporation, an insurance company, or any other legal entity may be said to be practicing law in some sense, we believe the proper focus of the unauthorized practice inquiry is whether the challenged activity results in the "unauthorized" practice by the individuals involved.

Op. at 160 (footnote omitted).

The majority thus reshapes the law regarding the unauthorized practice of law, even referring to it as the "unlicensed practice of law," Op. at 158, and limits the unauthorized practice of law inquiry to the qualification and activity of the individuals (impliedly only natural persons) involved,

---

**3.** The trial court found that Celina's house counsel violated Indiana Rule of Professional

Conduct 5.5(b) when representing Celina's insureds.

such as when a disbarred attorney practices, an unlicensed person practices, or an out-of-state attorney practices without a license or proper approval. This new understanding obliterates the function of the statute in criminalizing conduct by *both* natural *and* legal persons who are not subject to this Court's authority under the professional rules. Under the majority's interpretation, only limited and indirect recourse [4] is available against general business corporations and other organizational entities that employ licensed attorneys and hold them out to the public. I am convinced that the legislature intended a broader application of the statute than the majority's interpretation allows. I believe the statute presently proscribes entities from undertaking such activities.

Under Indiana statutory law, the unauthorized practice of law occurs when a person (whether natural or legal) not authorized to practice law in Indiana holds himself, herself, or itself out as a practicing lawyer, conducts a trial in a court, engages in the business of a practicing lawyer, or otherwise represents another person in a matter having legal consequences. The unauthorized practice of law statute is violated when either (1) an unlicensed individual engages in the practice of law, or (2) a person or entity, through its use of lawyers or non-lawyers, engages in the practice of law.[5] Under this interpretation, recourse may be taken under this Court's Rules of Professional Conduct against attorneys who improperly practice law, and recourse may be taken under the unauthorized practice of law statute against persons, both real and legal, who engage in the unauthorized practice of law. This second means of recourse would include corporations and other entities that employ attorneys and hold them out to the public as providing legal services.[6] I believe that Celina, through its use of a licensed attorney-employee, engaged in the unauthorized practice of law in violation of Indiana statutory law.

## 2. The Corporate Practice of Law

Under long-settled Anglo–American law, corporations and other organizational entities have been prohibited from practicing law.[7] This black-letter law has governed

---

**4.** In identifying recourse available against organizational entities, the majority refers to the possibility of disciplinary action against individual attorneys under the professional rules and the prosecution, under Indiana statutory law, of unlicensed persons who engage in the practice of law and of their accomplices and those employing them. Under the majority opinion, it appears that there would be little or no direct recourse against organizational entities who use licensed attorneys in an unauthorized way.

**5.** One author has stated:
> Unauthorized law practice can occur in two ways. A person who is not admitted to the bar of a jurisdiction may render legal services in that jurisdiction. Alternatively, a person or entity that is not authorized to practice law may hire a licensed lawyer and offer his or her services to another. In the second situation, the client is at least represented by counsel, but restrictions nevertheless apply because of a presumed threat of lay interference with the professional relationship.

STEPHEN GILLERS, REGULATION OF LAWYERS: PROBLEMS OF LAW AND ETHICS 599 (3d ed.1992).

**6.** The majority seems to favor prohibiting at least some of these activities by corporations, but, under its construction of the statute, the majority undermines its ability to do that.

**7.** *See* 7 AM.JUR.2D *Attorneys at Law* § 130, at 184 (1997) ("With certain limited exceptions, a corporation may not perform legal services for others, or indirectly practice law through the employment of lawyers to perform services for others.") (footnotes omitted); 19 C.J.S. *Corporations* § 568, at 201–02 (1990) ("Generally, a corporation cannot practice law, and, like anyone else, is prohibited from engaging in the unauthorized practice of law. Accordingly, a corporation cannot perform legal services for others, or employ practitioners of law to carry on the business of practicing law for it, even if it acts through licensed attorneys who are themselves members of the bar.") (footnotes omitted); David Gelber, Note, *Attorney and Client—Unauthorized Practice of Law*, 13 NOTRE DAME LAWYER 289, 289–90 & n. 1 (1938) ("The general rule that a corporation cannot practice law seems to be well settled in the United States today.... The original common law prohibition of the practice of law by a corporation has in recent

the practice of law in Indiana, presumably since the state was founded.[8] Just over eleven years ago, Chief Justice Shepard, writing for this Court, stated:

> A corporation is a creature of statute and can neither practice law nor act in person. Out of court it must act through its agents, and in court it must generally act only through an agent who is a licensed attorney. The fundamental principles regarding the authority of an agent of a corporation are substantially the same as those applicable to agents generally.

*Indiana Dep't of Public Welfare v. Chair Lance Service, Inc.*, 523 N.E.2d 1373, 1377 (Ind.1988). This Court has also said:

> "The practice of the law is personal. It is open only to individuals proved to the satisfaction of the court to possess sufficient general knowledge and ade-

quate special qualifications as to learning in the law and to be of good moral character.... A dual trust is imposed on attorneys at law: they must act with all good fidelity both to the courts and to their clients. They are bound by canons of ethics which have been the growth of long experience and which are enforced by the courts.

Practice of law under modern conditions consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court.... Although these transactions may have no direct connection with court proceedings, they are always subject to become involved in litigation. They require in many aspects a high degree of legal skill, a wide experience with men and affairs, and great capacity for adaptation to difficult and complex situations. These 'customary functions

years been embodied in statute by many states. Most of these statutes make it a *crime* for a corporation to engage in the practice of law, while others merely forbid it for professional purposes.") (citing cases); *Right of Corporation to Perform or to Hold Itself out as Ready to Perform Functions in the Nature of Legal Services*, 105 A.L.R. 1364, 1365–66 (1936) ("The general rule ... that a corporation cannot practise law ... is of course ... well settled.... [S]tatutes have been enacted in some states expressly prohibiting corporations from practising law, or, in some instances, professions generally. For the most part, these statutes seem merely to embody the common-law rule.") (discussing statutes and cases); *Right of Corporation to Perform or to Hold Itself out as Ready to Perform Functions in the Nature of Legal Services*, 73 A.L.R. 1327, 1328 (1931) ("[T]here is no judicial dissent from the proposition that a corporation cannot practise law.").

8. In 1962, the Standing Committee on the Unauthorized Practice of Law of the Indiana State Bar Association issued an opinion on the unauthorized practice of law. It stated:

> From time to time situations arise in which a certain person, performing a certain service, is engaged in the practice of law and yet is not licensed to do so. That person is engaged in the unauthorized practice of law.
> (a) Certain People May not Practice Law....

> (b) Corporations Cannot Practice Law. A corporation must appear in courts by an attorney....
> ... Clearly, a corporation may hire an attorney as its employee to give it legal advice and perform legal services for it in transactions in which it is a party.
> While the Supreme Court of Indiana has never been called upon to decide the question, this Committee believes that a corporation may not use people who are not lawyers to perform legal services. The Committee likewise believes that a corporation may not charge others a fee for legal advice or legal services rendered by persons in its employ.

ISBA Comm. on Unauthorized Practice of Law, Op. 1, at 12–14 (1962). *See also* 7 I.L.E. *Corporations* § 173, at 11 (1958) ("A corporation cannot in general practice a learned profession, and statutes prohibiting such practice are valid."); Glen D. Peters, *Bootleggers in Law*, 7 IND. L.J. 46, 53 (1931) ("It has been suggested and proposed in the legislature of [Indiana] that there be enacted a law, making it unlawful for a corporation to practice law. Now, it seems to me that that is utterly ridiculous. Of course, it is unlawful for a corporation to practice law. It is now unlawful, and it always has been unlawful for a corporation to practice law. The very statement of the proposition is its answer. It is just as sensible, it seems to me, to repeal the law of gravitation or to pass a law making it unlawful for objects to fall to the ground.").

of an attorney or counsellor at law' ... bear an intimate relation to the administration of justice by the courts. No valid distinction ... can be drawn between that part of the work of the lawyer which involves appearance in court and that part which involves advice and drafting of instruments in his office. The work of the office lawyer is the groundwork for future contests in courts.... *The underlying reasons which prevent corporations, associations and individuals other than members of the bar from appearing before the courts apply with equal force to the performance of these customary functions of attorneys and counsellors at law outside of courts.*"

*Fink,* 214 Ind. at 590–91, 17 N.E.2d at 97–98 (quoting *In re Opinion of the Justices,* 289 Mass. 607, 612, 194 N.E. 313, 316–17 (1935)) (internal citations omitted) (emphasis added).

Simply put, corporate and other organizational entities are unable to satisfy the admission requirements and thus are unable to be "duly admitted as ... attorney[s]-at-law by the supreme court of this state." [9] *See* IND.CODE § 33-1-5-1. Numerous reasons have been offered in support of this body of law, including primarily the concern that harm would come to the public as corporate business interests invade the attorney-client relationship, as the independence of professional judgment is eroded, and as the trust and confidence placed in attorneys is threatened.[10]

9. Other courts have so held. *See, e.g., Divine v. Watauga Hospital,* 137 F.Supp. 628 (M.D.N.C.1956); *Arkansas Bar Ass'n v. Union Nat'l Bank,* 224 Ark. 48, 273 S.W.2d 408 (1954); *Cooperman v. West Coast Title Co.,* 75 So.2d 818 (Fla.1954); *In re Co-operative Law Co.,* 198 N.Y. 479, 92 N.E. 15 (1910)

10. The New York Court of Appeals, in one of the leading cases to discuss the law prohibiting the corporate practice of law, provided the following reasons:

> The practice of law is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for the purpose. The right to practice law is in the nature of a franchise from the state conferred only for merit. It cannot be assigned or inherited, but must be earned by hard study and good conduct. It is attested by a certificate of the Supreme Court, and is protected by registration. No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal. It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts. As these conditions cannot be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in. As it cannot practice law directly, it cannot

> indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate.... The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated without consent, and it cannot exist between an attorney employed by a corporation to practice law for it, and a client of the corporation, for he would be subject to the directions of the corporation, and not to the directions of the client. There would be neither contract nor privity between him and the client, and he would not owe even the duty of counsel to the actual litigant. The corporation would control the litigation, the money earned would belong to the corporation, and the attorney would be responsible to the corporation only. His master would not be the client, but the corporation, conducted it may be wholly by laymen, organized simply to make money, and not to aid in the administration of justice which is the highest function of an attorney and counselor at law. The corporation might not have a lawyer among its stockholders, directors, or officers. Its members might be without character, learning or standing. There would be no remedy by attachment or disbarment to protect the public from imposition or fraud, no stimulus to good conduct from the traditions of an ancient and honorable profession, and no guide except the sordid purpose to earn money for stockholders. The bar, which is an institution of the highest usefulness and standing, would be degraded if even its humblest member became subject to the orders of a

Corporations may employ attorneys in connection with matters that arise in the course of business, but the scope of their representation is limited.[11] This principle was well-stated by the Committee on Unauthorized Practice of Law for the American Bar Association in an informative opinion: "While a corporation may employ legal counsel to render legal services to the corporation, such services are not the subject of barter on the market place by the corporate principal. This constitutes unauthorized practice of law by the corporate principal." ABA Comm. on Unauthorized Practice of Law, Informative Op. A (1967) (citing *Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650 (1934); *Steer v. Land Title Guarantee & Trust Co.*, 113 N.E.2d 763 (Ohio Ct.C.P.1953); *Hexter Title & Abstract Co. v. Grievance Com.*, 142 Tex. 506, 179 S.W.2d 946 (1944)), *reprinted in* RES GESTAE, May 1967, at 31, 32.

Under Indiana law, every person is entitled to act as his or her own attorney both in and out of court and to assume the consequences of those acts so performed. *State ex rel. Indiana State Bar Ass'n v. Indiana Real Estate Ass'n, Inc.*, 244 Ind. 214, 226 n. 2, 191 N.E.2d 711, 717 n. 2

(1963). This right, however, is possessed only by those who are the parties to the transaction. *Id.* at 226, 191 N.E.2d at 717. Only qualified, licensed attorneys may appear for other persons. *Matter of Estate of Rondinelli*, 692 N.E.2d 915, 918 (Ind.Ct. App.1998) ("only persons duly admitted to practice law in this state may appear on behalf of other persons") (citing *Butler v. State*, 668 N.E.2d 266, 268 (Ind.Ct.App. 1996)). *See also Simmons v. Carter*, 576 N.E.2d 1278, 1279 (Ind.Ct.App.1991) ("[W]hile any natural person may appear in court on his or her own behalf, only persons duly admitted to practice may appear on behalf of other persons.").

This Court has discussed the application of these rules to organizational entities involved in out-of-court actions that have legal consequences:

> We find no reason or authority for holding that a trust company, authorized by law to act as executor, administrator, guardian, or trustee, may not execute such trusts in the same manner and through the same agencies that may be resorted to by a natural person in the same situation, except, of course, that a natural person may act in *propria persona*, while a corporation must act through

---

money-making corporation engaged not in conducting litigation for itself, but in the business of conducting litigation for others. The degradation of the bar is an injury to the state.

 A corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it any more than it can practice medicine or dentistry by hiring doctors or dentists to act for it.

*In re Co-operative*, 92 N.E. at 16 (internal citations omitted).

11. See 7 AM.JUR.2D *Attorneys at Law* § 130, at 184 ("A corporation may properly utilize the services of a staff attorney to conduct its legal affairs. But a corporation may not designate a non-attorney employee to represent it. With certain limited exceptions, a corporation may not perform legal services for others, or indirectly practice law through the employment of lawyers to perform services for others.") (footnotes omitted); 19 C.J.S. *Corporations* § 568, at 202 ("[I]n the absence of statutory authority, a corporation cannot

practice law even in its own behalf. It may employ lawyers in any matter in which it has a direct primary interest, or in any litigation to which it is a party.") (footnotes omitted); 7 I.L.E. *Corporations* § 173, at 11–12 ("A corporation may ... employ professional people in connection with routine matters that arise in the course of business.... The general rules as to what constitutes the practice of a profession apply in determining whether or not a corporation is so practicing, or is holding itself out as qualified to practice. A corporation may not employ qualified practitioners to carry on the business of practicing for it. The practice of law by a corporation consists of the performance of legal services for others; a corporation may employ lawyers in any matter in which it has a direct primary interest without engaging in unlawful practice. Corporations authorized to act as trustees may perform certain acts which are necessarily incident to proper execution of a trust, notwithstanding that such acts encroach on the practice of law.") (footnotes omitted).

some natural person. If a natural person, who is not admitted to practice law, may do the things which the appellee has done without illegally practicing law, so can the trust company. If it is unwise to permit a corporation to act in a fiduciary capacity, the remedy is with the Legislature and not with the courts.

The practice of law is restricted to natural persons who have been licensed upon the basis of established character and competence as a protection to the public against lack of knowledge, skill, integrity, and fidelity. Disbarment procedure is available in the case of those who do not conform to proper practice. The practice of law involves advising or rendering services for another. A natural person may plead his own case in court or do any of the things for himself which if done for another would constitute practicing law. He may discuss the legal aspects of his affairs with other interested parties or with strangers. Either a natural person or a corporation may employ lawyers to do these things.

A corporation may choose its own attorney as freely as a natural person may do so. Where the services of an attorney are necessary in the execution of a trust, the trustee is charged with the responsibility of selecting an attorney and with the duty to exercise reasonable care in the selection, and a corporate fiduciary has the same duty and the same right as a natural person. A natural person acting as executor, administrator, guardian, or trustee, may choose his own personal attorney, employed by him on an annual salary basis, to perform services for his trust, without expense to the trust, or he may employ such a personal attorney at the expense of the trust, or he may employ some attorney with whom he has no business or professional connection. No reason is seen why a corporate fiduciary may not do the same. . . .

*Groninger*, 220 Ind. at 206–208, 41 N.E.2d at 141–42.

We have also explained:

When a corporation becomes a party to a civil action its status to represent itself in that proceeding differs from that of an individual. The individual has a personal stake in the outcome of the litigation and can readily be identified as both a party litigant and an individual person. A corporation, however, although a person in the eyes of the law, cannot be wholly identified with any individual person and thus, by necessity, must be represented by its agents. Those agents can only have an indirect stake in the case for the reason that a corporation exists as an independent legal entity, separate and distinct from its shareholders, officers or any agents. . . .

*State ex rel. Western Parks, Inc. v. Bartholomew County Court*, 270 Ind. 41, 44, 383 N.E.2d 290, 292–93 (1978). To this general rule, we have created a single, limited exception that presently applies in claims arising out of the business of the corporation that do not exceed $1,500 and that are filed as small claims, but then only after the corporation has designated an employee and satisfied specified filing requirements. Ind. Small Claims Rule 8(C).[12]

---

**12.** Small Claims Rule 8(C), originally adopted after *Western Parks*, now provides in part:

(C) Appearance. A natural person may appear pro se or by counsel in any small claims proceeding. A corporation must appear by counsel or, in unassigned claims not exceeding one thousand five hundred dollars ($1,500), by a full-time employee of the corporation designated by the Board of Directors to appear as the corporation in the presentation or defense of claims arising out of the business of the corporation.

In unassigned claims not exceeding one thousand five hundred dollars ($1,500), a sole proprietor or partnership may appear by a designated full-time employee of the business in the presentation or defense of claims arising out of the business.

. . .

No person who is disbarred or suspended from the practice of law in Indiana or any other jurisdiction may appear for a corporation or on behalf of a sole proprietor or partnership under this rule.

### 3. The Scope of Authorization for House Counsel

Under the rules promulgated by this Court and accepted forms of practice, members of the Indiana bar are authorized to practice, individually or with other attorneys, in private law firms, in the legal departments of corporations or other public or private organizations, and in group legal service plans. *See* Prof. Cond. R. Preamble; Prof. Cond. R. 1.13; Ind. Admission and Discipline Rule 26. In addition to practicing in partnerships, corporate legal departments, and group legal service plans, attorneys are also authorized to practice in other organizational contexts: professional corporations, limited liability companies, and limited partnerships. *See* IND.CODE § 23–1.5–1; IND.CODE § 23–18–1; IND.CODE § 23–4–1; Admis. Disc. R. 27. Nevertheless, all members of the Indiana bar, regardless of the nature or context of their practices, are subject to the same ethical and legal obligations under the professional rules.

When attorneys practice in organizational contexts, certain limitations apply to the organizations themselves. For instance, with professional corporations, limited liability companies, and limited partnerships, statutory law and court rules place specific requirements on these organizations in terms of organizational purpose, activities, control, and liability. *See* IND.CODE § 23–1.5–1; IND.CODE § 23–18–1; IND.CODE § 23–4–1; Admis. Disc. R. 27. In the case of professional corporations, our statutes have authorized attorneys to form professional corporations "to render services that may legally be performed only by an attorney." IND.CODE § 23–1.5–2–3(3). However, these professional corporations "may render professional services only through individuals permitted to render such services in Indiana." IND.CODE § 23–1.5–2–5(a). And, "[a] licensed individual acting in his individual capacity may render professional services, even though the individual may be a shareholder, director, officer, employee, or agent of a professional corporation." IND.CODE § 23–1.5–2–5(b). Also, with group legal service plans, our professional rules require the group plans to meet certain conditions before an attorney may render services pursuant to the plan and to file an initial disclosure statement, annual reports, and a final report upon the discontinuation of operation; included in these mandated filings are the names of the attorneys rendering services under the plan. *See* Admis. Disc. R. 26.

The majority correctly notes that the Preamble to our Rules of Professional Conduct defines "firm" and "law firm" to include "lawyers employed in the legal department of a corporation or other organization." Prof. Cond. R. Preamble. The majority also correctly recognizes that attorneys may be retained or employed by corporations and may work in their legal departments and that Rule 1.13 applies to attorneys "employed or retained" by a corporation or other organization. Indeed, members of the Indiana bar who serve as house counsel are subject to the professional rules and the obligations arising therefrom, like all other attorneys in Indiana.

However, none of these statutory or rule provisions constitutes authorization for insurance companies to employ house counsel to represent their insureds. As already noted, corporate and other organizational entities often employ house counsel in their legal departments to represent the entities in their legal matters and transactions. Indeed, when it comes to an entity's own legal matters and transactions, there is no real difference between an entity employing attorneys as house counsel or as outside counsel. In both cases, the entity-client hires an attorney to provide legal services. Like any other person, an organization may secure counsel to represent the company in its own affairs-whether that attorney is a salaried

Ind. Small Claims Rule 8(C).

attorney-employee or outside counsel is unimportant.

Indiana Professional Conduct Rule 1.13 states that "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." Thus, Rule 1.13 contemplates that an attorney retained or employed by an organization represents the organization. Implicit in this rule is the idea that an attorney employed in the legal department of an organizational entity represents the organization in those transactions in which the organization has a primary interest. This was the understanding at common law that provides the background and context for our statute and our professional rules.

### 4. The Trial Court's Holdings

The trial court correctly held that Celina was engaged in the practice of law, that its practice was unauthorized, and that its house counsel assisted in this unauthorized practice. As to Celina's engaging in the practice of law, it held:

> Celina does in fact engage in the practice of law when its salaried attorneys represent its insureds. A corporation acts through its agents and the acts of the agent are the acts of the corporation. Because Celina's attorneys are its agents, and the acts of those attorneys are therefore those of Celina, Celina is engaged in the corporate practice of law when it assigns its salaried attorneys to represent its insureds.

*See* Record at 1209 (internal citations and footnote omitted).

The majority rearranged the trial court's reasoning and reduced it to the following syllogism: "(1) the attorney-agents of Celina are engaged in the practice of law; (2) Celina, a corporation, can act only through agents; (3) the acts of the attorneys are those of Celina; therefore (4) Celina is engaged in the practice of law." Op. at 156.[13] While the majority dismissively characterized this as "a syllogism based on a series of propositions of dubious general validity," op. at 160, I am not persuaded that the trial court's propositions are false or even dubious.

These propositions are well-established legal principles in Indiana law. First, the trial court states its conclusion that Celina is engaged in the practice of law when its house counsel represent its insureds. Next, the trial court recites the established legal principles that a corporation can only act through its agents and that the acts of a corporation's agents are the acts of the corporation. *See Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135, 137 (Ind. 1988) ("Actions of employees and agents of corporation, when done in the scope of their employment, are attributable to the corporation."); *Hibschman Pontiac, Inc. v. Batchelor,* 266 Ind. 310, 315, 362 N.E.2d 845, 848 (1977) ("A corporation can act only through its agents, and their acts, when done within the scope of their authority, are attributable to the corporation."); *Soft Water Utilities, Inc. v. LeFevre,* 159 Ind.App. 529, 539, 308 N.E.2d 395, 399 (1974) ("A corporation acts through its agents and the acts of the agent are the acts of the corporation.") (citing *Johnston v. Baker,* 445 F.2d 424 (3d Cir.1971); *Pearson v. Youngstown Sheet & Tube Co.,* 332 F.2d 439 (7th Cir.1964); *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911 (5th Cir.1952)); *Evansville & Terre Haute R.R. Co. v. McKee,* 99 Ind. 519, 522 (1885) ("Where the particular

---

**13.** I read the trial court's reasoning actually to involve two consecutive syllogisms:

> Syllogism I: (1) a corporation can only act through its agents, and the acts of its agents are the acts of the corporation; (2) Celina is a corporation; therefore, (3) Celina can only act through its agents, and the acts of Celina's agents are the acts of Celina.

> Syllogism II: (3) Celina can only act through its agents, and the acts of Celina's agents are the acts of Celina; (4) Celina's attorneys are its agents and are practicing law; therefore, (5) Celina, the corporation, is practicing law.

*See* Record at 1209.

act [of an agent of a corporation] is within the scope of the agency, then it is, in legal contemplation, the act of the principal, no matter by what name the agent is designated[, as t]he material element is the authority of the agent, and not his mere name or position."). It logically follows that, because Celina is a corporate entity, Celina can only act through its agents, and the acts of Celina's agents are the acts of Celina.

Next, the trial court states that Celina's attorneys are its agents and that the acts of those attorneys in practicing law are the acts of Celina. When house counsel represents one of the insurance company's insureds, house counsel as an agent-attorney of the company is practicing law on behalf of the company; thus, the agent-attorney acts as the corporation in representing the third party. The attorney is not operating simply as counsel for the insurance company (conduct that is authorized by law). As an agent of the insurance company, the attorney's acts are the acts of the company, and the acts of the agent-attorney in representing insureds are properly attributed to the corporate entity.[14] It is in this situation that the company undertakes the practice of law.

The trial court's deductive reasoning led to the conclusion that Celina, the corporation, was engaged in the practice of law. The trial court's reasoning is sound, and its conclusion is proper.

The trial court also determined that Celina's practice of law was unauthorized:

The next inquiry must then be whether Celina's corporate practice of law is unauthorized and therefore illegal. No statutory or common law prohibition exists directly proscribing the corporate practice of law.

However, the absence of such a direct prohibition does not end the inquiry. In 1983, the Indiana legislature enacted the Professional Corporation Act, allowing "one (1) or more attorneys [to] form a professional corporation to render services that may legally be performed only by an attorney." I.C. 23–1.5–3–3(a)(3). Pursuant to that statute and Article 7, § 4 of the Indiana Constitution, the Indiana Supreme Court promulgated Admission and Discipline Rule 27, which permits "[o]ne or more lawyers [to] form a professional corporation ... for the practice of law ..."

The promulgation of this rule leads to the inference that nonprofessional corporations may not practice law. If corporations other than professional corporations were allowed to practice law, no rule would be necessary to specifically permit professional corporations to practice law, for a professional corporation is merely a specialized type of corporation.

Further, in addition to the implied prohibition against the nonprofessional corporate practice of law, the Admission and Discipline Rules are devoid of a rule specifically permitting the practice of law by a nonprofessional corporation. The absence of such a rule, considered in conjunction with the rule pertaining to professional corporations, leads ines-

---

**14.** The majority opinion cites the Restatement on agency law for the proposition that, "as a general proposition, where the law requires a license, agency doctrine permits an unlicensed legal entity to employ licensed agents to perform those acts requiring a license." Op. at 160 (citing RESTATEMENT (SECOND) OF AGENCY § 19 cmt. d (1958)). The comment in the Restatement states: "If a statute requires the doer of an act to be licensed, ordinarily an unlicensed principal can properly employ a licensed agent to do it." RESTATEMENT (SECOND) OF AGENCY § 19 cmt. d. However, the majority acknowledges that "neither an insur-

ance company nor a general business corporation can simply employ lawyers and hold them out to the public as offering legal services." Op. at 156. Thus, while agency law may generally allow entities to employ licensed professionals, corporations are prohibited by law from employing attorneys and using them in this way. Just as we decline to extend principles of general agency law to permit corporate house counsel to represent its paying customers, we should likewise continue to prohibit insurance company house counsel from representing its paying customers (insureds).

capably to the conclusion that only professional corporations are permitted to practice law. If the Indiana Supreme Court chose to do so, it could promulgate a rule permitting the nonprofessional corporate practice of law, just as it has with professional corporations. Instead, the Court has extended permission only to professional corporations, thereby barring nonprofessional corporations from the practice of law.

. . .

In light of the foregoing, because Celina is not a professional corporation, and because Celina is engaged in the practice of law when it assigns its salaried attorneys to represent its insureds, this court is compelled to conclude that such a practice by Celina constitutes the unauthorized practice of law by a corporation. . . .

*See* Record at 1209–12 (internal citations and footnote omitted).

The majority opinion correctly notes that the trial court concluded that "Celina's practice of law was unauthorized because Indiana's professional corporation statute implicitly prohibits general business corporations and insurance companies from practicing law." Op. at 156. The statutes were enacted and the rules were adopted because organizational entities were prohibited from practicing law and attorneys were prohibited from practicing law in such contexts. The statutes specifically authorize professional corporations and a limited class of other entities to render legal services, and court rules explicitly authorize attorneys to practice in contexts in which organizational entities and attorneys were previously prohibited from practicing law.[15] The authorization of these entities, under statute and court rules, to exist for the purpose of rendering services or the authorization of attorneys to practice in such contexts should not be read to support the conclusion that such entities are themselves practicing law.[16] The statutory provisions and the court rules that authorize attorneys to form and practice in certain organizational contexts include very specific requirements, *limiting* these organizations to protect the public and to preserve professional independent judgment. These statutes and rules *explicitly authorize* attorneys to form only certain kinds of organizational entities and to render legal services only through these entities when the requirements are satisfied. The relevant statutory provisions, including the Professional Corporation Act, and the relevant court rules were adopted against the backdrop of the common law and statutory prohibitions against the unauthorized practice of law and the corporate practice of law. Together, these considerations support the trial court's reasonable inference that general business corporations may not practice law.

The majority finds support in its assertion that Indiana has no express statutory prohibition against corporations practicing law.[17] In my view, however, because only

---

**15.** This actually represented a significant but limited change in the law. Prior to that time, attorneys were significantly restricted in their abilities to form and work within organizational entities.

**16.** The majority states that the professional corporation statute, in authorizing the entity to exist "to render services that may legally be performed only by an attorney," Ind.Code § 23–1.5–2–3(3), assumes that the professional corporation, by "rendering services" will itself be practicing law, just as Rule 5.4(b) describes a partnership as practicing law. Op. at 159. The majority then concludes that "[t]his statute reinforces the conclusion that entities may lawfully 'render' legal services if the activities are conducted by a licensed attorney." Op. at 159. Rather than generally granting entities the power to render legal services when the activities are conducted by licensed attorneys, I understand this statute to grant the power *only to certain authorized* entities so that they may lawfully "render" legal services if the activities are conducted by a licensed attorney.

**17.** The majority here points to North Carolina as an example of a jurisdiction in which the governing legal principles are established by statutory and decisional law. Op. at 156 n. 6 (citing N.C. GEN. STAT. § 84–5 (1985); *State v. Pledger*, 257 N.C. 634, 127 S.E.2d 337 (1962)). The absence of such a statute in Indiana is

certain persons, who have met specific qualifications and are licensed, may practice law in Indiana, the proper inquiry is not whether any law or rule prohibits this activity. Rather, it is whether any law or rule authorizes the insurance company to undertake this challenged activity. Under Indiana law, no statute or professional rule authorizes a general business corporation to render legal services or an insurance company to practice law.[18] Therefore, Celina engages in the unauthorized practice of law when its house counsel represents its insured.[19] *See* GEOFFREY C. HAZARD, JR., & SUSAN P. KONIAK, THE LAW AND ETHICS OF LAWYERING 903 (1990) ("[T]he corporation is engaged in unauthorized practice if its lawyers provide legal assistance to *others*, such as the corporation's customers. However, the corporation can provide legal assistance to *itself* without thereby engaging in practice of law."). Simply put, Celina is delivering legal services to policyholders through its employee, who is an attorney. Celina is not authorized to do this. The trial court is correct on this point.

After concluding that Celina was engaged in the unauthorized practice of law, the trial court ·found that Celina's house counsel violated the rule prohibiting an attorney from assisting in the unauthorized practice of law. The trial court determined that, "[b]ecause th[e] unauthorized practice of law results when Mr. Faber represents Celina's insureds, Mr. Faber is undeniably assisting Celina in unauthorized practice of law in violation of Indiana Rule of Professional Conduct 5.5(b)." Record at 1220. I agree.

### B. Violation of the Rules of Professional Conduct[20]

Confronting the relatively new practice within the insurance industry of house

not surprising considering the fact that the prohibition against the corporate practice of law has been assumed in Anglo–American law for centuries. The North Carolina statute simply memorialized a doctrine that was already well-established under the law. The majority cites the North Carolina Supreme Court decision for the proposition that "North Carolina case law ... explicitly held where a corporation's employees perform acts, they are the acts of the corporation." Op. at 156 n. 6 (citing *Pledger*, 257 N.C. 634, 127 S.E.2d 337).

**18.** The majority acknowledges this point: "neither an insurance company nor a general business corporation can simply employ lawyers and hold them out to the public as offering legal services." Op. at 156.

**19.** *See* 7 C.J.S. *Attorney & Client* § 29, at 863 n. 77 (1980) ("It is only when legal opinions of captive, salaried lawyers become, in effect, subject of barter on market place by corporate principals of such captive lawyers that there is the type of illegal, unauthorized practice of law by corporations which is prohibited by law; and therefore salaried lawyer for title company may render opinion to his own corporate principal without being guilty of unauthorized practice of law, but if corporate principal 'sells' that opinion, legal in nature, to outsider, corporate principal is guilty of

illegally practicing law.") (citing *Steer*, 113 N.E.2d 763).

**20.** The trial court carefully and thoughtfully considered the arguments presented by the parties. Although the trial court ultimately ruled in the plaintiffs' favor, the court did not accept every argument presented by the plaintiffs, but rather found some arguments to be meritorious, and others not. Based on the facts presented to the trial court upon the plaintiff's motion to disqualify Celina's house counsel, the trial court rejected the plaintiffs' contentions that house counsel in representing insureds violated certain provisions of the Indiana Rules of Professional Conduct: Rule 1.7(b) (prohibiting representation of a client when that representation is materially limited by the attorney's responsibilities to another client or to a third party or by the attorney's own interests); Rule 1.8(f) (prohibiting acceptance of compensation for representing a client from someone other than the client when there is interference with the attorney's independence of professional judgment or with the attorney-client relationship); Rule 5.4(a) (prohibiting sharing of legal fees with a non-lawyer); Rule 5.4(c) (prohibiting attorney from permitting a person who recommends, employs, or pays the attorney to direct or regulate the attorney's professional judgment); and Rule 7.3(f) (prohibiting attorney from compensating or rewarding those who recommend or secure attorney's employment).

counsel representing insureds in liability cases, the majority finds "no inherent conflict in such an arrangement but agree[s] that conflicts may arise," op. at 153, and holds that "attorneys employed by insurance companies may represent insureds under circumstances and to the extent permitted by their ethical obligations defined in the Admission and Discipline Rules and the Rules of Professional Conduct," op. at 163.

Various reasons have been offered, explaining why house counsel's representation of insureds is attractive to insurance companies: it controls costs; it saves money over the cost of outside counsel; it shifts the profit-margin from outside counsel to the insurance company itself; it affords closer monitoring; it achieves more efficient claims handling; and it increases the expertise of those handling such claims. *See* 1 GEOFFREY C. HAZARD, JR. & W. WILLIAM HODES, THE LAW OF LAWYERING: A HANDBOOK ON THE MODEL RULES OF PROFESSIONAL CONDUCT 256.10 (1990 & Supp. 1998); Ronald E. Mallen, *Defense by Salaried Counsel: A Bane or a Blessing?*, 61 DEF. COUNS. J. 518 (1994). Even though economic benefits may result when salaried house counsel represent insureds, I believe that the representation is inherently offensive to the principles and rules that govern the practice of law.

Indiana Rule of Professional Conduct 1.7 [21] *protects clients by ensuring that conflicts of interest do not compromise the singular loyalty of attorneys to their clients.*[22] Indeed, "[t]he basic duties a lawyer owes to a client—competence, confidentiality, communication, and loyalty—are all implicated in conflict of interest

situations." 1 HAZARD & HODES, *supra*, at 222. Hazard and Hodes explain:

In the modern view, a conflict of interest exists whenever the attorney-client relationship or the quality of the representation is "at risk," *even if no substantive impropriety—such as a breach of confidentiality or less than zealous representation—in fact eventuates.* The law of lawyering then proceeds by assessing the risk and providing an appropriate response. Some situations are so fraught with danger of serious impropriety, for example, that a *per se* rule of disqualification is usually imposed—a prophylactic ban that sometimes is not waiveable, even by a sophisticated and well-counselled [sic] client. In these situations (some of which are catalogued in Rule 1.8), the public interest in maintaining public confidence in the legal system outweighs the interest of individual lawyers and individual clients in freely contracting with each other.

When the risk of substantive harm is small, however, or when the risk is high but the harm is likely to be slight even if it occurs, only modest restrictions are imposed, and those may be waived by properly counseled clients. But that does not indicate the absence of a conflict of interest, nor does it mean that the conflict is only a "potential" conflict, as is sometimes said. Quite to the contrary. The conflict—the risk—already exists in the here and now; what is only "potential" is the actual harm—the actual breakdown of the client-lawyer relationship or actual harm to the quality of the representation.

Since the modern approach takes into account reasonable fears that improper

---

**21.** Rule 1.7 is understood to accomplish two purposes: (1) it "establishes the general principles governing all conflict of interest situations," including "the idea that lawyers should be insulated from limitations or distractions that might impinge upon their ability to serve clients loyally, and the notion that clients with conflicting interests may generally consent to continued representation by the

same attorney or firm—but only after 'consultation'"; and (2) it "describes the balance of client, third-party, and lawyer interests that is necessary in cases of concurrent representation of clients with conflicting interests." 1 HAZARD & HODES, *supra*, at 232.9.

**22.** "Loyalty is an essential element in the lawyer's relationship to a client." Prof. Cond. R. 1.7 cmt.

lawyer behaviors "may" develop, it has an historical kinship with the old method of judging conflicts of interest on the basis of "the appearance of impropriety." If a situation appears to reasonable persons to be inappropriate, after all, then it may well be so in fact.... Nonetheless, concern for appearances and for public confidence still underlies all of the automatic disqualification rules, and informs the balancing of interests even in cases where client waivers are permitted.

*Id.* at 223–25 (emphasis and parenthesis in original) (footnotes omitted).

Rule 1.7(a) prohibits an attorney from representing a client when the representation of that client will be directly adverse to another client, thereby adversely affecting the attorney's relationship with that other client. A comment to Rule 1.7(a) states that, "[a]s a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent." Prof. Cond. R. 1.7 cmt. Rule 1.7(a) "governs conflict of interest situations involving concurrent and direct adversity" and "imposes something akin to a *per se* ban on continued representation." 1 HAZARD & HODES, *supra,* at 232.10. The language of Rule 1.7(a) "suggests that any impairment of the client-lawyer relationship precludes concurrent representation in situations of *direct* client-to-client conflict." *Id.* at 239. Furthermore, Hazard and Hodes add:

The implication is that if the direct conflict damages the *relationship* of the lawyer to one or more of the clients (including, presumably, a client's subjective feeling of betrayal), then Rule 1.7(a) is triggered. This result would obtain even if each client agreed that in fact the lawyer had betrayed nobody, and had

given fully competent representation to all concerned.

*Id.* Thus, representation is only allowed when the attorney reasonably believes that the representation will not adversely affect the relationship with the other client and the fully counseled client has consented.

Rule 1.7(b) prohibits an attorney from representing a client when that representation is materially limited by the attorney's responsibilities to another client or to a third party or by the attorney's own interests. The comment to Rule 1.7(b) states:

Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client.... A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

Prof. Cond. R. 1.7 cmt. Rule 1.7(b) "governs the myriad of situations in which the conflict is muted or indirect" [23] and "requires a subtle calculus to determine the likelihood that the quality of the lawyer's representation will be affected." 1 HAZARD & HODES, *supra,* at 232.10. In the balancing process, the attorney must consider "all outside interests or responsibilities that could materially limit his ability to serve his clients." *Id.* at 251. In situations where these conflicts, such as liability insurance agreements where a third party pays for a lawyer's service to a client, "a

---

**23.** Rule 1.7(b) "deals with the competing interest that may distract a lawyer from the main task of serving his or her client" and "protect[s] against the risk that the pull of other interests will impair the quality of the lawyer's representation." 1 HAZARD & HODES, *supra,* at 249. Subsection (b) "applies whenever representation of a client *may* be impaired or limited by the lawyer's responsibilities to others, and does not depend upon the existence of an actual adverse relationship, 'direct' or not." *Id.*

danger exists that the lawyer will tailor his or her representation to please the third party, rather than the client. The distraction can become acute if the lawyer hopes to be rehired on behalf of other clients, and so curries favor with the payor of his fee." *Id.* at 251. Representation is allowed only if the fully counseled client has consented and the attorney reasonably believes that the representation will not be adversely affected.

Indiana Professional Conduct Rule 1.8 applies the basic conflict of interest principles of Rule 1.7 to specific "transactions in which the lawyer's own self-interest threaten to adversely affect the quality of representation to be provided." 1 HAZARD & HODES, *supra*, at 261. Rule 1.8(f) prohibits an attorney from accepting compensation for representing a client from someone other than the client when there is any interference with the attorney's independence of professional judgment or with the attorney-client relationship.[24] Before an attorney may provide representation in such a situation, the fully counseled client must consent, and information must be held in confidence as required by Rule 1.6.

It has been recognized that "[c]onflicts of interest potentially affecting the quality of the representation are inherent in situations in which an insurance carrier has agreed to provide a defense for its insured." 1 HAZARD & HODES, *supra*, at 256.5. Whether the situation is analyzed as one in which the attorney provides dual representation to both insurer and insured or as one in which the attorney represents the insured alone but the legal fees are paid by the third-party insurer, the essential issues are the same: are any material limitations placed on the representation; is

there interference with the attorney's independence of professional judgment; or is there interference with the client-lawyer relationship? In this "triangle," the attorney faces conflicting interests—loyalty to the insurer-client or loyalty to the insured-client. Understandably, both insurers and insureds have a common interest in defending against claims brought by plaintiffs. However, they often have different interests in terms of indemnification, confidentiality, trial tactics, willingness and ability to settle, coverage issues, excess liability exposure, etc. *See id.* at 256.6–56.10. These problems are only exacerbated when house counsel represents insureds.

While most members of the bar earnestly endeavor to fulfill their obligations under the Rules of Professional Conduct, I believe that the use of insurer-employed staff attorneys to represent insureds is inherently problematic. This situation presents conflicts of interest so inherent in the representation and so serious that the attorney-client relationship and the quality of the representation are at risk, despite the possible absence of substantive impropriety in a majority of individual cases. This practice is so fraught with danger that a *per se* rule of disqualification should be imposed. A prophylactic ban is justified because our interest in maintaining public confidence in the legal system outweighs the interest of individual lawyers and individual clients in freely contracting with each other.

Indiana Rule of Professional Conduct 5.4 protects clients by guarding attorneys'

---

24. Hazard and Hodes have discussed the relationship between Rule 1.8(f) and Rule 1.7(b):

> Rule 1.8(f) is largely superfluous, for its treatment of situations in which one party pays a lawyer to provide services for another adds little to what is already required by Rule 1.7(b). In the words of that rule, a lawyer's relationship to a third-party provider of legal services plainly constitutes an

"other responsibility" that may "materially limit the representation." Both rules accordingly condition the representation upon client consent after consultation. Obviously, the lawyer must be loyal to the client, not the one who is footing the bill.

1 HAZARD & HODES, *supra*, at 276. Furthermore, "[n]o substantive difference was intended" by the difference in wording. *Id.* at 276.1.

professional independence of judgment.[25] *See* Prof. Cond. R. 5.4 cmt. This Rule is designed to protect against a "series of problems ... that can arise when nonlawyers combine with lawyers to provide legal services.... Problems are thought to arise when nonlawyers either invest in or assume positions of authority in business arrangements other than the traditional partnership law firm."[26] 2 HAZARD & HODES, *supra* at 796. Rule 5.4(a) prohibits an attorney or law firm from sharing legal fees with a non-lawyer.[27] Rule 5.4(b) prohibits a lawyer from forming a partnership with a non-lawyer if any of the activities of the partnership consist of the practice of law.[28] Rule 5.4(c) prohibits an attorney from permitting a person who recommends, employs, or pays the attorney to direct or regulate the attorney's professional judgment. Rule 5.4(d)[29] prohibits an attorney from practicing with or in a professional corporation or association authorized to practice law for profit if a non-lawyer owns any interest therein, Rule 5.4(d)(1); if a non-lawyer is a corporate director or officer thereof, Rule 5.4(d)(2); or if a non-lawyer has the right to direct or control the professional judgment of a lawyer, Rule 5.4(d)(3).[30]

The same concerns that prompted the adoption of these Rule provisions lead me to believe that an insurance company's house counsel should not be allowed to represent the company's insureds. I believe that, when house counsel represents insureds, improper sharing of legal fees, profits, and losses occurs.[31] Under this arrangement, the threat of interference with a lawyer's professional judgment is not remote,[32] even when by contract the parties agree that the lawyer will retain control and exercise independent judgment.[33] As Dean Anthony Kronman has noted:

"is designed to prevent business relationships with nonlawyers from compromising a lawyer's independence of thought and action." *Id.* at 808.1.

**25.** Rule 5.4 and Rule 5.5 (regarding the unauthorized practice of law) "are intended to restrict the practice of law to lawyers, on the theory that only lawyers have the qualifications to practice law competently and according to the rules of professional discipline." 2 HAZARD & HODES, *supra,* at 766.

**26.** The dangers posed by lay intermediaries include the following: non-lawyers who are part of the business arrangement may engage in the practice of law; non-lawyers may learn the confidences of clients; and an attorney's independent professional judgment may be impaired. *Id.* at 797–98.

**27.** Rule 5.4(a) "assumes that all fee splitting with nonlawyers is the unauthorized practice of law, except for three very narrow exceptions." *Id.* at 799.

**28.** Rule 5.4(b) "flatly prohibits a lawyer from sharing the profits and losses of a law practice with a nonlawyer. It applies even though the lawyer retains control over all legal aspects of the business." *Id.* at 799.

**29.** The trial court's order did not address Indiana Professional Conduct Rule 5.4(d).

**30.** Rule 5.4(d) addresses "the possibility that a lawyer's professional judgment will be compromised as a result of business relationships with nonlawyers." *Id.* at 800. Also, this Rule

**31.** Regarding Rule 5.4(a), Hazard and Hodes have noted that "the phrase 'shall not share legal fees' is intended to bar *any* financial arrangement in which a nonlawyer's profit or loss is directly related to the successfulness of a lawyer's legal business." *Id.* at 801.

**32.** Hazard and Hodes explain that in situations where a third party pays a client's bill, "the lawyer must be sure he is serving the client and not currying favor with the non-client." *Id.* at 807. They identify an insurance company's hiring of lawyers for their insureds as a typical situation in which this issue arises. *Id.* They continue by discussing the utilization of a "captive" law firm, noting that, "[p]lainly, such an arrangement carries with it enhanced danger of a violation of Rule 5.4(c)." *Id.* at 807–08 n. 0.1.

**33.** The majority's recognition of "many [implicit and explicit] restrictions ... on the forms of business entities available to an attorney for the practice of law," op. at 156, suggests that some arrangements by their very nature are too close to the edge to allow, even though in individual cases the attorneys may be able to steer between the lines.

[E]very in-house law office is by definition tied to the interests of the business of which it forms a part—a tie that constrains the independence of the lawyers working in it and compromises their imaginative capacity to hold the interests of the business that employs them at arm's length, as lawyers who wish to give the best advice about the most important matters must.

ANTHONY T. KRONMAN, THE LOST LAWYER: FAILING IDEALS OF THE LEGAL PROFESSION 379 (1993). Not only do non-lawyers own interests in insurance companies, but also, once house counsel are allowed to represent insureds, non-lawyers, particularly corporate directors and officers, inevitably may control and decide matters related to the legal practice of the salaried attorneys.

I read the majority opinion to acknowledge that professional independence is to some extent compromised when employed staff counsel represent insureds. The majority states that "the marketplaces of ideas and premium charges will sort this out and strike a balance between claimed cost advantages and perceived desirability of wholly independent counsel." Op. at 163.

The majority attempts to minimize these concerns by the following: "*Employee-attorneys may be subject to pressures from their employer. But it is also unrealistic to suggest that an outside lawyer is immune from the blandishments of a client, particularly a high volume client that may be the source of a significant portion of the firm's revenues.*" Op. at 163 (emphasis added). Here, the majority relies on two suspect practices—pressures placed upon employee-attorneys by employers and blandishments showered upon outside counsel by clients—to justify an even more suspect practice. Certainly, the pressures of employers and blandishments of co-clients, and the resulting erosion of client loyalty and independence of professional judgment represented thereby, are distressing encroachments on professional judgment. We should seek to prevent or minimize these negative influences, rather than embracing and expanding them.

The majority urges that the parties can continue "to duke this issue out in those marketplaces [of ideas and premium charges] without interference from the judiciary." Op. at 163. I believe that this Court should not abandon to the marketplace our duty and responsibility to regulate the practice of law. The laws against the unauthorized practice of law are designed to protect the public by requiring that only licensed, qualified, and regulated professionals will provide legal representation, and the professional rules seek to ensure that these professionals uphold certain standards and values in their practices, including uncompromised loyalty to their clients, regardless of conflicting interests, and uncompromised independence of professional judgment. After all, the practice of law is not a business, but a profession, and participation in this profession is a privilege open only to qualified individuals who abide by prescribed ethical standards.